BACON CONSTRUCTION COMPANY, INC. *v.*
DEPARTMENT OF PUBLIC WORKS
(SC 18198)

Norcott, Katz, Palmer, Zarella and Bishop, Js.

Argued September 9, 2009—officially released February 9, 2010

*Timothy S. Fisher*, with whom were *Brian P. Rice*, and, on the brief, *Charles D. Ray*, for the appellant (defendant).

*Timothy T. Corey*, with whom was *Richard F. Wareing*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The defendant, the department of public works, appeals[1] from the judgment of the trial court granting the application of the plaintiff, Bacon Construction Company, Inc., to confirm an arbitration award for damages relating to a public works contract between the parties and denying the defendant's motion to vacate the award, and from the court's denial of the defendant's motion to dismiss the application to confirm. The defendant claims that the trial court improperly accepted the arbitrator's determination regarding the arbitrability of the plaintiff's claims and, specifically, the arbitrator's interpretation of General

---

[1] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Statutes § 4-61[2] and conclusion that the plaintiff's claims had been timely asserted under that statute. The defendant claims that it therefore follows that (1) the trial court and this court lack subject matter jurisdiction because the plaintiff's claims are barred by the doctrine of sovereign immunity, (2) the plaintiff's claims are not

[2] General Statutes § 4-61 waives the state's sovereign immunity with respect to certain claims arising under public works contracts and provides in relevant part: "(a) Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Public Works, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined . . . .

"(b) As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims for determination under (1) the rules of any dispute resolution entity, approved by such person, firm or corporation and the agency head and (2) the provisions of subsections (b) to (e), inclusive, of this section, except that if the parties cannot agree upon a dispute resolution entity, the rules of the American Arbitration Association and the provisions of said subsections shall apply. The provisions of this subsection shall not apply to claims under a contract unless notice of each such claim and the factual bases of each claim has been given in writing to the agency head of the department administering the contract within the time period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier. A demand for arbitration of any such claim shall include the amount of damages and the alleged facts and contractual or statutory provisions which form the basis of the claim. No action on a claim under such contract shall be brought under this subsection except within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends three years after the acceptance of the work by the agency head of the department administering the contract evidenced by a certificate of acceptance issued to the contractor or three years after the termination of the contract, whichever is earlier. Issuance of such certificate of acceptance shall not be a condition precedent to the commencement of any action. . . ."

arbitrable, and (3) the award does not conform to the submission. The plaintiff responds that (1) the defendant is not entitled to judicial review of whether the plaintiff's claims are arbitrable under § 4-61 because the defendant submitted the issue of arbitrability to the arbitrator without objection, and (2) the trial court properly granted the plaintiff's application to confirm the award because the award conformed to the submission. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history.[3] On May 13, 1992, the plaintiff and the defendant entered into a contract pursuant to which the plaintiff agreed to perform masonry and plank work in connection with the construction of a correctional facility in Niantic. The plaintiff was to commence work on June 1, 1992, and the contract provided for an overall project duration of 300 calendar days. The plaintiff's work on the project required coordination with various other contractors. Coordination was the responsibility of the defendant, which delegated that responsibility to its construction manager, Tishman Construction Corporation (Tishman). Tishman failed to schedule and coordinate the contractors properly, and, as a result, the plaintiff was delayed in performing its work. Ultimately, the plaintiff remained at the work site until November, 1993, well past the 300 day duration provided for in the contract.

Early on in the project, the plaintiff complained to the defendant that it would be incurring additional costs due to delays and issued to the defendant various notices of claims for reimbursement of such costs. The

---

[3] Our statement of the facts is culled from the arbitrator's preliminary ruling on the defendant's affirmative defenses of February 7, 2007, the arbitrator's decision, award and findings of fact of January 25, 2008, the trial court's memorandum of decision on the defendant's motion to dismiss of April 22, 2008, and the trial court's memorandum of decision on the defendant's motion to vacate the arbitration award of May 7, 2008.

defendant initially disputed the plaintiff's claims but eventually, in October, 1994, authorized the issuance of several change orders that approved contract payment for the plaintiff's claims. On November 8, 1994, Tishman advised the plaintiff to submit two requisitions for payment, one for the value of the outstanding contract work, adjusted by the change orders, and the second for the retainage.[4] In response, on November 10, 1994, the plaintiff submitted requisitions for payment in accordance with Tishman's directive. In December, 1994, the defendant issued a check to the plaintiff for the first requisition but did not pay the retainage.

In April, 1995, the defendant advised the plaintiff that it would issue final payment in exchange for a release in its favor. On May 22, 1995, the plaintiff gave the defendant a release, but the defendant subsequently failed to pay the plaintiff the retainage. The plaintiff sent letters to the defendant in June and July, 1995, advising that the release had been issued on the basis of the defendant's representation that it would issue the final payment. The defendant did not respond to these letters.

In March, 1996, the plaintiff again sent a letter to the defendant, advising that if it did not pay the balance in full, the plaintiff would take legal action. This letter also went unanswered. In August, 1996, however, the defendant advised the plaintiff that some of the buildings that the plaintiff had worked on were leaking due to the plaintiff's allegedly defective workmanship. In response, the plaintiff submitted a quote to perform the repair work, agreeing to absorb one third of the cost.

---

[4] Retainage is generally defined as "[a] percentage of what a landowner pays a contractor, [which is] withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired." Black's Law Dictionary (9th Ed. 2009). The contract between the plaintiff and the defendant provided for retainage of 2.5 percent of the value of work performed.

The plaintiff performed the work and submitted an invoice for two thirds of its cost. The defendant did not pay that invoice.

Having received no satisfaction from its letters to the defendant seeking payment in the years that followed, the plaintiff submitted a notice of claim to the defendant on October 1, 2004, pursuant to § 4-61 (b).[5] Thereafter, on or about August 1, 2005, the plaintiff filed a demand for arbitration, seeking damages for the following: (1) lost productivity arising from the delay that required the plaintiff to remain on site after the project completion date; (2) additional expenses incurred as a result of being forced to work during the winter of 1993; (3) reimbursement for the settlement of a delay claim asserted against the plaintiff by one of its subcontractors; (4) lost profits and overhead expenses; (5) payment of the outstanding contract balance; (6) payment for the repair work performed in 1996; and (7) prejudgment interest.

In April, 2006, the arbitrator appointed to decide the parties' dispute conducted a preliminary telephone conference with the parties, during which the defendant asserted that the arbitrator lacked authority to consider the plaintiff's claims under § 4-61 because the plaintiff had not filed notice of its claim and had not commenced the arbitration within the statute's time limitations. The defendant then requested that the arbitrator decide the issue of his authority to hear the plaintiff's claims before proceeding further. Thereafter, the arbitrator ordered that the evidentiary hearings be bifurcated. In the initial phase of the proceedings, the arbitrator was to decide the defendant's affirmative defenses of (1) sovereign

[5] As a prerequisite to filing a demand for arbitration, General Statutes § 4-61 (b) requires that "notice of each . . . claim and the factual bases of each claim [be] given in writing to the agency head of the department administering the contract . . . ." In the present case, the plaintiff's notice of claim described the claims that it later asserted in its demand for arbitration.

immunity based on the plaintiff's alleged failure to comply with the time limitations set forth in § 4-61, (2) release, and (3) settlement by accord and satisfaction. In the second phase, the arbitrator was to decide the merits of the plaintiff's claims. In an answering statement dated October 12, 2006, the defendant stated in relevant part: "The actual issues in this proceeding are [the plaintiff's] delay and disruption claims, and [the defendant's] special defenses that: [the plaintiff's] claims are barred by the doctrine of sovereign immunity; [the plaintiff] released [the defendant] from its claims; and [the plaintiff] settled its claims with [the defendant]. Those issues may be heard and fully and finally determined by this arbitration.

"This approach is precisely what the parties anticipated at the outset of this arbitration. . . ."

On November 15 and 16, 2006, the arbitrator conducted the initial phase of the evidentiary hearings. On February 7, 2007, the arbitrator issued a preliminary ruling with respect to his authority to hear the case and the defendant's affirmative defenses. In his ruling, the arbitrator concluded that he had authority under § 4-61 to arbitrate the plaintiff's claims and ruled against the defendant with respect to its defenses of release and settlement.[6] Specifically, the arbitrator found that,

---

[6] With regard to the defendant's defenses of release and settlement, the arbitrator concluded that "[t]he parties did reach an accord but there has not been full performance by [the defendant]. Full performance by all parties pursuant to an accord is necessary to constitute satisfaction of the claims within the scope of that agreement. . . . Because [the defendant] has not fully performed, the release is unenforceable. . . .

"It is undisputed that [the defendant] has not paid the consideration recited in the release. While the amount might be arguably deemed nominal, it still has not been paid. Moreover, I cannot find from the evidence presented a meeting of the minds on the terms of the 'release' as argued by [the defendant]. Clearly, for there to be an accord and satisfaction, there must be a meeting of the minds." (Citations omitted.)

Although the defendant, in its motion to vacate the award, argued that the arbitrator's ruling on the issue of release and settlement violates public

"[i]nasmuch as no certificate of acceptance was ever issued [by the defendant] and [the plaintiff] was not terminated, it seems beyond doubt that the period for filing a claim, by the express language of [§ 4-61], ha[d] not yet expired and that, therefore, the notice filed in 2004 and the arbitration demand filed in 2005 [were] . . . timely." The arbitrator further found that "[a]rticle 33 of the contract provides a context to construe 'termination.' 'Termination' there refers to a process for ending the contract prior to completion, either for reasons of default or for the state's convenience. Accordingly, in the context of the contract . . . there was no premature termination of the contract by [the defendant], and, therefore, the time for filing the notice of claim and demand for arbitration ha[d] not been triggered by a 'termination.' "

On January 25, 2008, the arbitrator issued his decision, award and findings of fact on the merits of the plaintiff's claims. The arbitrator awarded the plaintiff $434,974.34, which included damages for each of the claims that the plaintiff had asserted in the arbitration. On February 13, 2008, the plaintiff filed an application to confirm the award in the Superior Court for the judicial district of Hartford. Thereafter, the defendant filed a motion to dismiss the plaintiff's application to confirm and a motion to vacate the award. In its motion to dismiss, the defendant claimed that the trial court lacked subject matter jurisdiction over the plaintiff's application to confirm because the plaintiff had not asserted its claims within the time limitations set forth in § 4-61 and, therefore, that the plaintiff's claims were barred by the doctrine of sovereign immunity. Similarly, in its motion to vacate the award, the defendant claimed that the plaintiff's claims were not arbitrable and that the award did not conform to the submission because

policy, the defendant has not raised this issue or any other issue with respect to these defenses on appeal.

the plaintiff had failed to assert its claims within the time limitations contained in § 4-61.[7]

On April 22, 2008, the trial court denied the defendant's motion to dismiss. In its memorandum of decision, the court found that the defendant had submitted the issue of arbitrability to the arbitrator and, specifically, the issue of whether the plaintiff timely had asserted its claims under § 4-61. The court concluded that the defendant was bound by the arbitrator's decision on this issue because the defendant had empowered the arbitrator to decide it. In addition, the court determined that the doctrine of res judicata precluded the defendant from asserting a claim for lack of jurisdiction.[8] Accordingly, the trial court concluded that it had subject matter jurisdiction over the plaintiff's application to confirm the award.[9]

[7] The defendant also claimed in its motion to vacate the award that the award violates public policy and that the arbitrator acted in manifest disregard of the law in making the award. The defendant has not raised either of these claims on appeal.

[8] The court's determination on the issue of res judicata appears to have been premised on the fact that the parties had submitted the issue of arbitrability to the arbitrator and, therefore, that the defendant could not relitigate that issue in court. The court relied on this same reasoning in addressing the sovereign immunity issue. Accordingly, although the defendant has not appealed specifically from the trial court's res judicata determination, the defendant, in raising the issue of sovereign immunity, necessarily challenges on appeal the basis of the trial court's decision on the res judicata issue. Thus, our resolution of the issue of sovereign immunity necessarily resolves the issue of res judicata.

[9] The trial court also cited as an additional reason for denying the defendant's motion to dismiss that the motion was procedurally improper. The court stated that the defendant should have contested jurisdiction in its motion to vacate rather than contesting it in a motion to dismiss. Because "a claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings"; *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 293 Conn. 582, 610, 980 A.2d 819 (2009); including on appeal, we must address the issue regardless of the procedural vehicle through which it is raised. Accordingly, it is unnecessary for us to determine whether the defendant used the proper procedural vehicle to raise the issue in the trial court proceedings. See id., 610 n.31 (rejecting appellant's procedurally based argument that court should not consider alternate ground for affirmance when such ground involved court's

On May 8, 2008, the court granted the plaintiff's application to confirm the award and denied the defendant's motion to vacate. In its memorandum of decision, the court concluded that the submission of the dispute to the arbitrator had been unrestricted and, therefore, that the award was not subject to de novo review as to errors of fact or law. Accordingly, the court held that the decision of the arbitrator must stand on the issue of arbitrability.[10] This appeal followed. Additional facts will be set forth as necessary.

We first address the defendant's claim that the trial court improperly denied its motion to dismiss. The defendant claims that the plaintiff's claims are barred by the doctrine of sovereign immunity and, therefore, that the trial court and this court lack subject matter jurisdiction. This claim is premised on the defendant's contention that the trial court improperly accepted the arbitrator's determination regarding the arbitrability of the dispute and, specifically, the arbitrator's interpretation of the time limitations period specified in § 4-61 and conclusion that the plaintiff's claims had been timely asserted under that statute. The defendant contends that the arbitrator's interpretation of the statute is incorrect[11] and that that interpretation should be reviewed de novo. The defendant argues that, if the interpretation

lack of subject matter jurisdiction).

[10] The court also concluded that the arbitrator did not manifestly disregard the law and that the award did not violate public policy. The defendant has not challenged these determinations on appeal.

[11] The time limitation period contained in § 4-61 is triggered by either the defendant's issuance of "a certificate of acceptance . . . to the contractor or . . . the termination of the contract, whichever is earlier." General Statutes § 4-61 (b). The defendant claims that the arbitrator incorrectly interpreted the phrase "the termination of the contract," as used in § 4-61 (b), to mean a premature termination of the contract rather than the mere conclusion of the contract. We have not previously interpreted this phrase in connection with § 4-61 and, for the reasons set forth in this opinion, have no reason to interpret it in this case. We therefore express no opinion as to whether the arbitrator correctly interpreted that phrase.

of § 4-61 that it urges is accepted and applied, then the plaintiff's claims would be untimely[12] and thus barred by the doctrine of sovereign immunity. The plaintiff responds that the trial court properly accepted the arbitrator's determination regarding arbitrability because the defendant had waived judicial review of that issue when it submitted it to the arbitrator without objection. Accordingly, the plaintiff contends that the trial court properly denied the defendant's motion to dismiss. We agree with the plaintiff.

We begin by setting forth the standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 477–78, 964 A.2d 73 (2009). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 347, 977 A.2d 636 (2009).

"It is a well-established rule of the common law that a state cannot be sued without its consent." (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 78, 818 A.2d 758 (2003). "We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity

---

[12] The defendant argues that the phrase "termination of the contract," as used in § 4-61 (b), means the conclusion of performance of the contract. The defendant argues that if this definition is applied to the facts of this case, then the contract terminated in 1994, when the plaintiff completed its work on the project and was entitled to payment.

. . . ." (Citation omitted.) *Miller* v. *Egan*, 265 Conn. 301, 314, 828 A.2d 549 (2003).

As an initial matter, we note that we have jurisdiction to hear this appeal regardless of whether the trial court had jurisdiction over the confirmation of the award. See *Gemmell* v. *Lee*, 42 Conn. App. 682, 684 n.3, 680 A.2d 346 (1996) (appellate court has jurisdiction to determine whether trial court had subject matter jurisdiction). We also note that a trial court's jurisdiction over an application to confirm an arbitration award derives from General Statutes § 52-417, which provides in relevant part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. . . ."

With regard to the doctrine of sovereign immunity, it is undisputed that the plaintiff asserted its claims pursuant to § 4-61, "which waives the state's sovereign immunity with respect to certain claims arising under public works contracts . . . ." *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 2–3, 946 A.2d 1219 (2008) (*White Oak*). It is also undisputed that the plaintiff's claims arise from the type of contract to which § 4-61 applies. The basis for the defendant's claim of sovereign immunity is that the plaintiff did not assert its claims within the time limitations set forth in the statute. The trial court, in its memorandum of decision on the defendant's motion to dismiss, found that the issue of timeliness, or arbitrability, had been submitted to the arbitrator for decision, and that the arbitrator resolved that issue in favor of the plaintiff. The trial court, in denying the defendant's motion to dismiss, accepted the arbitrator's decision and did not review the issue of arbitrability de novo. The defendant claims that this was improper. Accordingly, we review de novo whether the trial court properly accepted the arbitra-

tor's determination regarding the arbitrability of the dispute and, on that basis, denied the defendant's motion to dismiss.

We begin by noting that, in *White Oak*, this court acknowledged that federal arbitration law has distinguished between conditions precedent to arbitration, such as time limitations, on the one hand, and substantive issues of arbitrability, on the other. See id., 7–8 n.8. We observed that the former is committed exclusively to the arbitrator's authority, whereas the latter is committed to the court's authority. See id. (under federal law, "an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled . . . i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met" [internal quotation marks omitted]), quoting *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002). Nonetheless, this court concluded in *White Oak* that it "need not decide whether the defense of sovereign immunity generally is a procedural question for the arbitrators to decide under the federal Arbitration Act; see 9 U.S.C. § 2; or the state arbitration provision; see General Statutes § 52-408; because, under the circumstances . . . the scope of the arbitral submission [was] not defined by a contractual agreement to arbitrate, but, rather, by a statutory waiver of sovereign immunity [under § 4-61]." *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7–8 n.8. Accordingly we concluded that "whether an arbitration is barred by the doctrine of sovereign immunity pursuant to [§ 4-61] is a matter for the courts, not for the arbitrators, to decide." Id., 7 n.8.

Although *White Oak* did not involve the time limitations for bringing a claim under § 4-61, for the reasons stated in that decision, we conclude that the issue of arbitrability in the present case is one over which the

courts have primary authority. Therefore, we turn to our case law addressing the procedures by which parties may obtain de novo judicial review of the issue of arbitrability and the circumstances under which parties may lose the right to such review.

In *White* v. *Kampner*, 229 Conn. 465, 641 A.2d 1381 (1994), we stated that "there are two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration." (Citations omitted; internal quotation marks omitted.) Id., 476. With regard to this second route, we noted that it was limited by our prior holdings, in which we stated that "a party who voluntarily submits a dispute to arbitration without objecting to the arbitrability of the dispute waives judicial review of that issue." Id., 477. Thus, we determined that, when a party has opted to take the second route, the issue of whether that party has preserved judicial review of arbitrability turns on whether it properly objected to the arbitrability of the dispute. See id.

Thus, as the previous discussion reflects, in cases such as the present case, three distinct inquiries may arise: (1) whether the matter is arbitrable; (2) who has primary authority to decide that question—the arbitrator or the court; and (3) if the matter is one over which the court would have primary authority, did the parties engage in, or fail to engage in, conduct that precludes judicial review of the arbitrator's decision on that mat-

ter. See *First Options of Chicago, Inc.* v. *Kaplan,* 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (clearly setting forth first two questions); *White* v. *Kampner,* supra, 229 Conn. 475–78 (addressing whether defendants, by their actions, waived judicial review of issue of arbitrability when court had primary authority to decide that issue but parties nonetheless submitted it to arbitrator). The third inquiry has two distinct parts: preservation and waiver. A party has preserved its challenge to the arbitrability of the matter for judicial review by raising that issue before the arbitrator. A party who has made such a challenge nonetheless may *waive* its right to judicial review by agreeing to vest the arbitrator with authority to decide that issue.

In the present case, the defendant took the initial step necessary to preserve the arbitrability issue by raising its sovereign immunity defense before the arbitrator. Had it done nothing further, it would have been entitled to de novo judicial review. We conclude, however, that the defendant waived its right to judicial review[13] by agreeing that the arbitrator would be the final authority on that matter.

Specifically, the record reveals that the defendant, rather than objecting to or protesting the arbitrator's authority to decide the arbitrability of the dispute, actually embraced and availed itself of the arbitration pro-

---

[13] In the present case, the waiver of judicial review applies only to the arbitrator's decision regarding arbitrability and does not prevent the defendant from attacking the arbitrator's decision on the basis of any of the grounds enumerated in General Statutes § 52-418 (a) for vacating an arbitration award: "(1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

ceedings to determine that issue. In April, 2006, during a preliminary telephone conference between the parties and the arbitrator, it was *the defendant* who requested that the arbitrator determine the issue of arbitrability. Thereafter, in its answering statement of October 12, 2006, the defendant stated: "The actual issues in this proceeding are [the plaintiff's] delay and disruption claims, and [the defendant's] special defenses that: [the plaintiff's] claims are barred by the doctrine of sovereign immunity; [the plaintiff] released [the defendant] from its claims; and [the plaintiff] settled its claims with [the defendant]. *Those issues may be heard and fully and finally determined by this arbitration.*" (Emphasis added.) The defendant stated in the next sentence, which started a new paragraph: "This approach is precisely what the parties anticipated at the outset of this arbitration." We conclude that the defendant's unequivocal declaration that "[the] issues may be heard and *fully and finally determined* by this arbitration"; (emphasis added); demonstrates that the defendant intended to be bound by the arbitrator's decision and constitutes a waiver of judicial review[14] of the issue of arbitrability.[15]

The defendant nonetheless argues that the issue of arbitrability and the applicability of the doctrine of sov-

---

[14] We are mindful that only the legislature, and not the attorney representing the state in a particular dispute, may waive the state's sovereign immunity. See, e.g., *Miller* v. *Egan*, supra, 265 Conn. 313–14. Our conclusion in the present case does not violate this tenet because we merely hold that the defendant waived *judicial review* of the issue of sovereign immunity and not sovereign immunity itself. Indeed, the facts of the present case reveal that the defendant not only did not waive sovereign immunity but vigorously litigated that issue in *its* chosen forum, before the arbitrator.

[15] At oral argument, counsel for the defendant claimed that the defendant "objected to the arbitration." It is unclear as to what the defendant's counsel was referring to when he made this statement. To the extent that the defendant is attempting to equate an "objection" with its initial submission of the issue of arbitrability to the arbitrator in April, 2006, such claim is belied by the defendant's answering statement, which provides that "the parties anticipated *at the outset of this arbitration*" that the "issues may be heard and *fully and finally determined* by this arbitration." (Emphasis added.)

ereign immunity, in particular, are matters for the court to decide de novo, regardless of the arbitrator's determination of these issues. In support of this argument, the defendant relies on *Prudential Property & Casualty Ins. Co.* v. *Perez-Henderson*, 49 Conn. App. 653, 714 A.2d 1281, cert. denied, 247 Conn. 917, 722 A.2d 807 (1998) (*Prudential*), *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 1, *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 737 A.2d 398 (1999) (*ECAP*), *White* v. *Kampner*, supra, 229 Conn. 465, and *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 926 A.2d 1035 (2007). These cases, however, are distinguishable from the present case or do not otherwise support the defendant's claim.

First, *Prudential* is completely inapposite. In *Prudential*, the Appellate Court held that the plaintiff in that case could challenge the issue of arbitrability by way of an application to vacate, even though that issue was decided in the arbitration. See *Prudential Property & Casualty Ins. Co.* v. *Perez-Henderson*, supra, 49 Conn. App. 658. In reaching this decision, however, the court specifically declined to address whether the plaintiff had waived judicial review of the issue of arbitrability because it "fail[ed] to appear in court to respond to the defendant's application to compel arbitration." Id., 658 n.4. Thus, because the court did not address the issue of waiver, *Prudential* is irrelevant to our analysis in the present case.

The defendant's claim that *White Oak* is dispositive of the issue in the present case also is incorrect. As we previously noted, *White Oak* addressed the issue of who, as between the courts and arbitrators, has primary authority to decide whether a claim brought pursuant to § 4-61 is not arbitrable because it is barred by the doctrine of sovereign immunity. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7 n.8. "[U]nder the circumstances of [*White Oak*, we con-

cluded that the courts had primary authority to decide that issue because] the scope of the arbitral submission [was] not defined by a contractual agreement to arbitrate, but, rather, by a statutory waiver of sovereign immunity [under § 4-61]."[16] Id., 7–8 n.8. *White Oak,* however, did not address the issue of waiver because the defendant in that case, which opposed arbitration, declined to submit the issue of arbitrability to the arbitrator and, instead, filed an action in court for a permanent injunction barring the arbitration. Id., 5. In the present case, on the other hand, the defendant chose to forgo the route of judicial intervention and, instead, opted affirmatively to submit the issue of arbitrability to the arbitrator by means of its answering statement and oral request that the arbitrator rule on its affirmative defense of sovereign immunity. Thus, unlike in *White Oak,* in which the scope of the parties' arbitral submission was based solely on the language of § 4-61, in the present case, the parties explicitly agreed[17] to

[16] Specifically, we determined that the language of § 4-61 (b) dictates that "the authority to file a demand for arbitration under § 4-61 (b) is contingent [on] the existence of a disputed claim . . . for which an action in the Superior Courts properly could be filed under § 4-61 (a). Stated another way, waiver of the state's sovereign immunity under § 4-61 (a) is a condition precedent to the arbitral submission in § 4-61 (b)." *Dept. of Transportation* v. *White Oak Corp.,* supra, 287 Conn. 7 n.8. Accordingly, we concluded, that "whether an arbitration is barred by the doctrine of sovereign immunity pursuant to § 4-61 (a) is a matter for the courts, not for the arbitrators, to decide." Id. In reaching this conclusion, we relied on our decision in *White* v. *Kampner,* supra, 229 Conn. 473, 475, for the proposition that when the issue of arbitrability (i.e., whether a condition precedent to arbitration is satisfied) is not part of the contractual submission, that issue is a matter for the court to decide. *Dept. of Transportation* v. *White Oak Corp.,* supra, 7 n.8.

[17] The defendant's answering statement indicates that the parties had an agreement to arbitrate the issue of sovereign immunity or arbitrability. Specifically, the statement provides: "The actual issues in this proceeding are [the plaintiff's] delay and disruption claims, and [the defendant's] special [defense] that: [the plaintiff's] claims are barred by the doctrine of sovereign immunity . . . . Those issues may be heard and fully and finally determined by this arbitration.

"*This approach is precisely what the parties anticipated at the outset of this arbitration.*" (Emphasis added.)

submit the issue of arbitrability to the arbitrator, and, therefore, the scope of their submission was supplemented by their agreement and not defined solely by § 4-61. Accordingly, *White Oak* has no bearing on the issue of waiver, which is the precise issue that we must resolve in the present case.

To the extent that the defendant claims that *White Oak* precludes parties from agreeing to submit the issue of arbitrability under § 4-61 to an arbitrator, we disagree. *White Oak* stands for the proposition that, when a case arises under § 4-61, in the absence of an agreement between the parties to arbitrate the issue of arbitrability, the courts have primary authority to decide that issue. See id., 7–8 n.8. *White Oak* does not, however, prohibit parties from affirmatively submitting such an issue to an arbitrator if they so choose. Indeed, such a prohibitory interpretation would be contrary to our decisions in *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 576 A.2d 153 (1990), and *Frager* v. *Pennsylvania General Ins. Co.*, 155 Conn. 270, 231 A.2d 531 (1967), in which we stated that "[w]hether a particular dispute is arbitrable is a question for the court, *unless, by appropriate language, the parties have agreed to arbitrate that question, also.*" (Emphasis added.) *Frager* v. *Pennsylvania General Ins. Co.*, supra, 274; accord *Welch Group, Inc.* v. *Creative Drywall, Inc.*, supra, 467. Moreover, our decision in *White Oak* implicitly recognized that, in any particular case, the scope of the arbitral submission may be defined by an agreement rather than by statute alone. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7–8 n.8. Finally, in *White Oak*, we relied in part on *White* v. *Kampner*, supra, 229 Conn. 465, a case in which the parties subsequently agreed to submit the issue of arbitrability to an arbitrator, even though the scope of the arbitral submission did not, in the first instance, commit that issue to the arbitrator. See id., 469, 475.

Accordingly, just as we reached the issue of waiver of judicial review in *Kampner*; id., 475–78; we conclude that *White Oak* does not prevent us from reaching that issue in the present case.

As with *White Oak,* our decision in *Dept. of Public Works* v. *ECAP Construction Co.,* supra, 250 Conn. 553, also is not dispositive of the issue in the present case. In *ECAP,* the department of public works (department) filed an action seeking a permanent injunction barring a contractor from arbitrating a claim against the department for breach of an agreement that purported to settle various claims that the contractor had against the department relating to a construction contract. Id., 556. Specifically, the department claimed that the contractor's claim did not fall within the limited waiver of sovereign immunity contained in § 4-61 because the parties' disagreement over the settlement agreement "did not constitute a disputed claim arising 'under' the contract within the meaning of the statute." Id., 557. On appeal, we agreed with the department and stated: "It is clear . . . that the parties' purported settlement agreement . . . constitutes a separate agreement that, although related to the [construction] contract, does not arise 'under' that contract." Id., 562. "The legislature's use of the word 'under' [in § 4-61 (a)], as opposed to a broader term such as 'related to,' 'connected with' or 'derived from,' indicates an intent to authorize only those disputed claims against the state that fall directly under the contract itself. To permit an action against the state for a claim that is related to or connected with a public works contract would expand the limited waiver of immunity inherent in § 4-61 beyond the statute's plain language. . . . We are not persuaded that the legislature intended such an expansion of § 4-61." Id., 559.

Although *ECAP* correctly interprets the scope of the waiver of sovereign immunity contained in § 4-61, it

does not address whether a court or an arbitrator has primary authority to determine if a particular claim falls within that scope. Moreover, *ECAP* does not address the issue of waiver. These issues were not present in *ECAP* because, unlike in the present case, the department in *ECAP* declined to submit the issue of sovereign immunity to the arbitrator and, instead, filed an action in court for a permanent injunction barring the arbitration. Id., 556. Accordingly, as with *White Oak*, *ECAP* has no bearing on the issue of whether the defendant in the present case, having submitted the issue of arbitrability to the arbitrator, thereby waived judicial review of that issue.

Our decisions in *Kampner* and *MBNA America Bank, N.A.* v. *Boata,* supra, 283 Conn. 381, are directly on point because they address the issue of whether a party has waived judicial review of the issue of arbitrability. The facts in those cases, however, differ from those of the present case and thus dictate a different result. In *Kampner*, the parties submitted the issue of arbitrability to the arbitrator even though the contractual submission did not include the issue of arbitrability. See *White* v. *Kampner*, supra, 229 Conn. 469, 475. The plaintiff in *Kampner* argued that the submission of the issue of arbitrability to the arbitrator constituted a waiver of the defendants' right to have that issue reviewed by a court. Id., 475. We disagreed and concluded that the defendants had preserved judicial review of the issue of arbitrability because "the defendants repeatedly objected to the arbitrability of the dispute before the commencement of arbitration proceedings . . . ." Id., 478. Those objections included numerous written communications to the American Arbitration Association and to the plaintiff stating that arbitration should not proceed because of the failure of a condition precedent to arbitration. Id., 469 and nn.3–4. In addition, we noted that the trial court had made an "explicit finding that

the issue [of arbitrability] was submitted [to the arbitrator] in the context of the [defendants'] objection to the arbitration proceedings." Id., 478.

Similarly, in *Boata*, we held that the defendant in that case was entitled to contest the arbitrability of a dispute by means of an objection to the plaintiff's application to confirm an award because such objection was made on the ground that the parties never had entered into an agreement to arbitrate and because the defendant properly had preserved that claim.[18] *MBNA America Bank, N.A.* v. *Boata,* supra, 283 Conn. 395–96. With regard to the issue of preservation of judicial review, we noted that, at the outset of the arbitration, "[t]he defendant, representing himself pro se, responded to the plaintiff by claiming, inter alia, that he 'was never informed that there [was] an [a]rbitration [c]lause,' and that he 'never agreed under any contractual relationship to arbitrate his disputes with [the plaintiff] . . . [and] is not bound by the [arbitration] [a]greement presented by the [plaintiff] . . . .' Accordingly, the defendant requested that the arbitrator dismiss the plaintiff's claim." Id., 384. Notwithstanding these objections, the arbitrator proceeded with the arbitration and issued an award without "address[ing] the defendant's claim that he had not agreed to binding arbitration or his related request for dismissal of the plaintiff's claim." Id. Under these circumstances, we held that the defendant did

---

[18] The plaintiff in *Boata* claimed that the defendant's objection to the plaintiff's application to confirm was procedurally improper and that the defendant instead should have filed a motion to vacate the award. See *MBNA America Bank, N.A.* v. *Boata,* supra, 283 Conn. 394. The plaintiff argued that, because the defendant did not seek to vacate the award within the time limits prescribed in General Statutes §§ 52-418 and 52-420 (b), he did not preserve his right to challenge the award. Id. We rejected this argument because the defendant's ground for his objection, namely, that an agreement to arbitrate never existed, is not enumerated in § 52-418, and, therefore, such an objection "is not subject to the timeliness provisions of § 52-420 (b)." Id., 395.

not waive review of the issue of arbitrability because his objection properly preserved his claim. Id., 395–96. Indeed, the absence of *any* agreement to arbitrate necessarily would deprive the arbitrator of *any* authority to decide the claims. See id., 395.

The facts in the present case clearly distinguish it from those in *Kampner* and *Boata,* and demonstrate that the defendant in the present case waived judicial review of the issue of arbitrability. Unlike the defendants in *Kampner* and *Boata,* the defendant in the present case did not object to the arbitrator's authority to decide the arbitrability of the dispute before the commencement of arbitration proceedings or claim that no arbitration agreement existed between it and the plaintiff. To the contrary, the record demonstrates that the defendant *expressly* agreed to the arbitration proceedings. Not only did the defendant submit the issue of arbitrability to the arbitrator, but, more significantly, it also explicitly stated in its answering statement that that issue *"may be heard and fully and finally determined by this arbitration."* (Emphasis added.) Such actions are wholly unlike those of the defendants in *Kampner* and *Boata,* who never agreed to be bound by the decisions of their respective arbitrators and, moreover, vehemently objected to the arbitration proceedings from beginning to end. Therefore, we conclude that the defendant in the present case waived judicial review of the issue of arbitrability. In light of this conclusion, it follows that the trial court properly accepted the arbitrator's determination that the plaintiff's claims were timely and arbitrable under § 4-61.

We next address the defendant's claim that the trial court improperly granted the plaintiff's application to confirm the award. Specifically, the defendant claims that (1) the plaintiff's claims are not arbitrable, and (2) the award does not conform to the submission. The standard for reviewing these claims require "what we

have termed in effect, de novo judicial review. . . . [O]ur inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred." (Citation omitted; internal quotation marks omitted.) *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 754–55, 980 A.2d 297 (2009). The defendant's remaining claims, like its sovereign immunity claim, are premised entirely on the defendant's argument that the trial court improperly accepted the arbitrator's determination that the plaintiff's claims were timely and arbitrable under § 4-61. Because we have concluded that the trial court properly accepted the arbitrator's determination, these claims have no merit.

The judgment is affirmed.

In this opinion the other justices concurred.