******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BACON
CONSTRUCTION COMPANY,
INC., ET AL.
(AC 36829)

Beach, Sheldon and Bear, Js.

*Argued March 17—officially released September 22, 2015*

(Appeal from Superior Court, judicial district of Waterbury, Complex Litigation Docket, Dooley, J.)

*Jared Cohane*, with whom were *Timothy T. Corey* and, on the brief, *Peter J. Martin*, for the appellant (named defendant).

*Charles D. Ray*, with whom were *Benjamin F. Elliott* and, on the brief, *Thomas J. Finn* and *John J. Robinson*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The named defendant, Bacon Construction Company, Inc.,[1] appeals from the trial court's denial of its motion for summary judgment, in which it argued that the claims herein asserted by the plaintiff, the state of Connecticut, are all barred by the doctrines of res judicata and collateral estoppel[2] because such claims were or could have been made and decided in an earlier arbitration proceeding initiated by the defendant pursuant to General Statutes § 4-61.[3] We affirm the judgment of the trial court.

This action arises out of a contract between the plaintiff and the defendant for the construction of the York Correctional Institution in Niantic. After completion of its work under the contract, the defendant filed a demand for arbitration, in which it sought money damages against the plaintiff for alleged breach of contract. The arbitrator ruled in favor of the defendant, and thus awarded it damages as requested. That award was later confirmed by the Superior Court and upheld by our Supreme Court on the plaintiff's appeal from the Superior Court's judgment confirming the award. See *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 987 A.2d 348 (2010).

The plaintiff thereafter brought the present action in the Superior Court. This action arises out of the same contract that was the subject of the previous arbitration proceeding, and is based on allegations that the defendant was negligent and breached its contract with the plaintiff in performing its work at the York Correctional Institution. At the outset of this action, the plaintiff filed an application for a prejudgment remedy against the defendant, seeking various forms of relief. In its objection to that application, the defendant asserted, inter alia, that, in light of the arbitrator's determination that the defendant had performed all of its obligations under the contract, the plaintiff's claims were all barred by the doctrines of res judicata and collateral estoppel. In a memorandum of decision dated December 16, 2008, which we will discuss more fully in this opinion, the trial court rejected the defendant's claims of res judicata and collateral estoppel, and thus overruled the defendant's objection.[4]

The defendant thereafter filed a motion for summary judgment, wherein it once again alleged, inter alia, that the plaintiff's claims were all barred by the doctrines of res judicata and collateral estoppel, and thus that the defendant was entitled to judgment on those claims as a matter of law. On January 21, 2014, the court denied the defendant's motion for summary judgment. The court explained, in so ruling, that it had "reviewed the records from the arbitration proceeding and all of the exhibits upon which the parties rel[ied] in their respective submissions," and found that the issues raised in

the motion for summary judgment "were correctly decided" by the court when, on December 16, 2008, it overruled the defendant's objection to the plaintiff's application for a prejudgment remedy.[5] The court concluded: "No useful purpose would be served by a reiteration of the law and analysis set forth in [the December 16, 2008] memorandum of decision. [The defendant's] argument that [the court's earlier determination of the preclusion claims] runs contrary to fundamental breach of contract law is not persuasive and is rebutted by the principles and concepts relied upon . . . in [that] . . . decision. The doctrines of res judicata and collateral estoppel do not bar the [plaintiff's] claims against [the defendant]. The motion for summary judgment is denied."[6]

The following relevant factual and procedural history was set forth in the trial court's December 16, 2008 memorandum of decision on the defendant's objection to the plaintiff's application for a prejudgment remedy. "[The defendant] is one of ten defendants whom the [plaintiff] alleges are responsible for substantial defects in the design and construction of the correctional facility for women (York) at Niantic. . . .

"The allegations of the complaint filed [in this action], very briefly stated, are as follows. [The defendant], a Rhode Island corporation, performed masonry and related services on a project which involved the design and construction of twenty-two buildings at York (project). The project began in 1990 with design activities; construction commenced in 1991 and was completed in 1996. Over time the state experienced problems with water intrusion into the buildings, cracks in the masonry facade and efflorescence and organic growth on the masonry facade, which problems continued and worsened. Engineers retained by the state identified numerous defects in the design, construction and installation of the masonry work.

"In its first two counts the complaint alleges that these defects were proximately caused by [the defendant]'s breach of its contract with the [plaintiff] and its negligence in performing under the contract. In the third and fourth counts the [plaintiff] claims that, in order to receive partial payments for its work, [the defendant] either intentionally or negligently made misrepresentations when it filed periodic certifications that it had performed its work in compliance with the plans, specifications and contract documents. As a result, the [plaintiff] claims to have incurred costs to correct the defects and to repair or replace damaged furnishings and equipment, suffered a diminution in the value and service life of York, lost the beneficial use of York or portions of it and experienced increased operating costs and inefficiencies in its operation of York. . . .

"[The defendant]'s demand for arbitration was filed with the American Arbitration Association (AAA) on

August 1, 2005, and it sought to resolve a 'dispute over payment of contract balance and payment for additional work.' . . . It was stated in two counts, one for breach of contract; the other, unjust enrichment. . . . Paragraph 8 of both counts alleged that '[the defendant] undertook the performance of its obligations under the contract in strict and full accordance with the plans, specifications, and general and special conditions of the contract and amendments thereto, and did completely and fully satisfy the obligations of the contract.' . . .

"In its 'answering statement' of October 12, 2006, the [plaintiff] stipulated to that allegation . . . and in an amended answering statement of November 1, 2006, the [plaintiff] made clear that it so stipulated 'for the limited purposes of this arbitration only.' . . .

"In between these two pleadings [the defendant] attempted to file an amended demand for arbitration which added a third count alleging that its work under the contract was 'performed in accordance with the plans and specifications and *free from defect.*' . . . In its prayer for relief on this proposed amendment, it sought, in effect, a declaratory judgment that it had performed its work in accordance with the plans and specifications and *free from defects.* . . . The [plaintiff] objected to this attempt on the ground that the requested declaratory relief was not permitted under § 4-61. It made it clear that it might, indeed, have claims against [the defendant] and others involved in the construction of York for allegedly defective construction, which it intended to bring 'in a different jurisdiction.' . . . After the [plaintiff] filed a notice of its election not to file counterclaims against [the defendant] in the arbitration, reserving its rights to assert such claims in 'another forum and/or action' . . . the arbitrator ruled that he lacked jurisdiction to consider the claim for declaratory relief because it was not a claim 'under the contract,' as required by § 4-61. . . . He 'denied' [the defendant]'s amended complaint, and ordered that the arbitration proceed under its original demand. . . .

"The arbitrator rendered his decision on January 25, 2008. . . . He summarized [the defendant]'s claims as follows: '[The defendant] alleges that it is entitled to damages on account of unpaid contract balance, additional work and costs incurred as a consequence of delays and disruptions attributable to [the state] and/ or its project construction manager. . . .' The major portion of the [arbitrator's] decision analyzed [the defendant]'s claims for damages due to alleged delays and disruptions of the construction schedule caused by the [plaintiff] and/or its construction manager. . . . Its allegation, admitted by the [plaintiff] for purposes of the arbitration, that it had performed in accordance with its contract with the [plaintiff] played no role in the arbitrator's determination of those claims.

"The arbitrator did find that [the defendant] was entitled to payment of an outstanding balance of $82,812.81, known as the 'retainage' on the contract. . . . He made no findings as to whether [the defendant] had proved its allegation that it had performed 'in strict and full accordance with the plans, specifications and general and special conditions of the contract and amendments thereto,' noting simply that the state 'has not challenged' that assertion. . . . [The arbitrator concluded:] 'In light of that admission . . . I see no legal basis why [the defendant] would not be entitled to its retainage. . . .' " (Citations omitted; emphasis in original.)

The court further found: "A review of the arbitrator's decision demonstrates that most of [the defendant]'s claims had to do with delays and disruptions in the construction schedule, who was responsible for them and what were their consequences for [the defendant]. . . . These were not the kinds of claims which required the arbitrator to determine whether [the defendant] performed its work negligently and, therefore, not the kind of claims to which the state would be expected to assert its claim for allegedly defective construction. [The defendant]'s claim for the retainage on the ground that it had performed in conformity with the construction contract would have permitted the state to claim in response that it had performed negligently, but it did not *require* the state to do so. . . . The [plaintiff] did raise as special defenses a jurisdictional claim of sovereign immunity due to alleged untimely notice and one of accord and satisfaction . . . both of which the arbitrator rejected. . . . Certain performance related claims which the state attempted to raise in its posthearing brief; viz., that [the defendant] had failed to pay prevailing wages on the project, to provide a ten year warranty against moisture intrusion and to deliver as-built drawings . . . did not go to the quality of [the defendant]'s work on the project and were not considered by the arbitrator." (Citations omitted; emphasis in original.)

The trial court concluded: "The conduct of the arbitration and its resolution by the arbitrator demonstrates that the [plaintiff] never asserted in arbitration the claim of defective construction it makes in the complaint here. Furthermore, when [the defendant] attempted to force the issue by its proposed amendment of the arbitration complaint, the arbitrator refused to entertain the amendment because he lacked jurisdiction to do so. Finally, whether or not [the defendant]'s performance was in conformity with its contract with the state was never litigated in the arbitration, the arbitrator ordering payment of the retainage based on the state's admission of that allegation for purposes of the arbitration."

As previously noted, the trial court relied expressly upon the December 16, 2008 decision on the defendant's

objection to the plaintiff's application for a prejudgment remedy in denying the defendant's motion for summary judgment based upon its special defenses of res judicata and collateral estoppel to the plaintiff's instant claims of negligence and breach of contract. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]he scope of our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Doran* v. *First Connecticut Capital, LLC*, 143 Conn. App. 318, 320–21, 70 A.3d 1081, cert. denied, 310 Conn. 917, 76 A.3d 632 (2013). The applicability of the doctrines of res judicata and collateral estoppel presents a question of law over which our review also is plenary. See *Marques* v. *Allstate Ins. Co.*, 140 Conn. App. 335, 339, 58 A.3d 393 (2013); *Nipmuc Properties, LLC* v. *Meriden*, 130 Conn. App. 806, 812, 25 A.3d 714, cert. denied, 302 Conn. 939, 28 A.3d 989 (2011), cert. denied, U.S. , 132 S. Ct. 1718, 182 L. Ed. 2d 253 (2012).

We begin with a brief overview of the doctrines of res judicata and collateral estoppel in general before addressing the defendant's specific claims on appeal as to the applicability of those doctrines to this case. "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. . . . [W]e have observed that whether to apply either doctrine in any particular case should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . .

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribu-

nal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made. . . . Res judicata bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action . . . which might have been made. . . .

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." (Citations omitted; internal quotation marks omitted.) *Massey* v. *Branford*, 119 Conn. App. 453, 464–65, 988 A.2d 370, cert. denied, 295 Conn. 921, 991 A.2d 565 (2010).

Here, the defendant argues that the claims set forth in the plaintiff's complaint in this case are barred by both doctrines. If the plaintiff's claims are barred by either doctrine, the defendant is entitled to judgment as a matter of law and analysis of the other doctrine would be unnecessary. Because we conclude that the plaintiff's claims are not barred by either doctrine, we address each in turn.

## I

## RES JUDICATA

The defendant first claims that the plaintiff's claims in this action are barred by the doctrine of res judicata. Specifically, the defendant claims that the plaintiff could have filed a counterclaim in the arbitration proceeding, and thus could have had its present claims decided therein. The defendant also claims that the arbitrator's award would be nullified by a judgment in favor of the plaintiff on its claims in this case. We are not persuaded.

Section 22 of the Restatement (Second) of Judgments, which we follow, provides:[7]

"(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

"(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

"(a) The counterclaim is required to be interposed by

a compulsory counterclaim statute or rule of court, or

"(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." 1 Restatement (Second), Judgments § 22 (1982).

Thus, the defendant's argument regarding the plaintiff's failure to assert a counterclaim in the arbitration proceeding would be valid in a compulsory counterclaim jurisdiction. Connecticut, however, is a permissive counterclaim jurisdiction. See Practice Book § 10-10;[8] *Gattoni* v. *Zaccaro*, 52 Conn. App. 274, 280, 727 A.2d 706 (1999); *Hansted* v. *Safeco Ins. Co. of America*, 19 Conn. App. 515, 520 n.4, 562 A.2d 1148, cert. denied, 212 Conn. 819, 565 A.2d 540 (1989). In Connecticut, the fact that a defendant in a prior action did not assert a related cause of action in that prior action does not foreclose the defendant from asserting those claims in a new action filed in the future.[9] As explained in the commentary to the Restatement: "The justification for the existence of such an option is that the defendant should not be required to assert his claim in the forum or the proceeding chosen by the plaintiff but should be allowed to bring suit at a time and place of his own selection." 1 Restatement (Second), supra, § 22, comment (a), pp. 186–87. Thus, the plaintiff is not barred from asserting its claims in this action by virtue of its failure to interpose those claims in the arbitration proceeding.

The defendant also claims that the successful prosecution of the plaintiff's claims in this case would nullify the arbitrator's determination that the defendant had fully performed its contractual obligations. Although the arbitrator concluded, albeit on the basis of a stipulation by the plaintiff for purposes of the arbitration, that the defendant had fulfilled its contractual obligations, he made no determination as to the quality of the work performed by the defendant under the contract. In other words, a determination by this court that the work performed by the defendant was deficient would not be contrary to the arbitrator's determination that the defendant had completed such work. The arbitration award was based on entirely different claims than those asserted by the plaintiff in this action. A judgment in favor of the plaintiff herein would not nullify the arbitration award. We therefore conclude that the court properly determined that the plaintiff's claims are not barred by the doctrine of res judicata.

II

COLLATERAL ESTOPPEL

The defendant also claims that the plaintiff's claims in this action are barred by the doctrine of collateral estoppel because the arbitrator previously ruled that it had "under[taken] the performance of its obligations

under the contract in strict and full accordance with the plans, specifications, and general and special conditions of the contract and amendments thereto . . . ." The defendant claims, as it did at trial, that the plaintiff's claims in this action were actually litigated or necessarily determined in the arbitration proceeding. We disagree.

As previously noted, "[f]or an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009).

In rejecting the defendant's claim of collateral estoppel, the trial court first observed as follows: "[The defendant]'s protestations that the issue of its contractual performance was 'actually litigated' in the arbitration . . . are stated in conclusory fashion, unsupported by any references to the arbitration record and contradicted by the arbitrator's decision. In the only reference to that issue in his decision, the arbitrator makes it clear that he is relying solely on the state's stipulation to [the defendant]'s performance of the contract and not on any evidence introduced before him. . . .

"Moreover, three decisions made by the arbitrator demonstrate that the issue of [the defendant]'s performance was not litigated in the arbitration. First is his denial of [the defendant]'s request to amend its complaint to seek a declaration that it had performed in accordance with the contract and 'free from defect.' . . . Second, he denied a request by [the defendant] to inspect York to show that '[the plaintiff's] allegations of defective and incomplete work have no merit' . . . because he did not believe that 'the evidence that is proposed to be developed by way of the inspection would be material or relevant to the issues that I must decide,' in view of the [plaintiff]'s stipulation for purposes of the arbitration that [the defendant] had performed in accordance with the contract. . . . Third, he specifically declined to consider certain performance related claims which the [plaintiff] attempted to raise in its posthearing brief; viz., that [the defendant] had failed to pay prevailing wages on the project, to provide a ten year warranty and to deliver as-built docu-

ments. . . .

"Much of [the defendant]'s argument that principles of collateral estoppel should bar this action by the [plaintiff] rests on allegations that the [plaintiff] could have or should have raised the issue of defective construction as a defense in the arbitration. As the Restatement puts it, however, '[a]n issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted . . . in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial . . . .' 1 Restatement (Second), supra, § 27, comment (e), pp. 256–57." (Citations omitted.)

On the basis of the foregoing observations and analysis, the court concluded that the plaintiff's allegations of defective construction by the defendant were not fully and fairly litigated in the arbitration proceeding. We agree with the trial court's conclusion, and we further conclude that a determination that the defendant's work under contract at the York Correctional Institution was free from defects was not necessary to the arbitrator's decision that it was entitled to payment of the retainage allegedly due and owing to it under the contract. The court thus properly determined that the plaintiff's claims are not barred by the doctrine of collateral estoppel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In addition to the named defendant, whom, for convenience, we refer herein to as the defendant, also named as defendants in the underlying action were: Tishman Construction Corporation of New England; HDR Architecture, P.C.; Maguire Group, Inc.; Stratton Company, Inc.; J.S. Nasin Company; Independent Materials Testing Laboratories, Inc.; Testing Labs, Inc.; Naek Construction Company, Inc.; B.W. Dexter II, Inc.; Jolley Concrete, Inc.; American Masons and Building Supply Company; Travelers Casualty and Surety Company; American Insurance Company; and Employers Insurance of Wausau, A Mutual Company. Only the named defendant was a party to the plaintiff's previous application for a prejudgment remedy, which we will discuss, and only the named defendant is a party to this appeal.

[2] Although the denial of a motion for summary judgment ordinarily is not appealable because it does not conclude the action, the denial of a motion for summary judgment predicated on a claim of res judicata or collateral estoppel has been deemed to constitute a final judgment for purposes of appeal. *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 346 n.7, 63 A.3d 940 (2013).

[3] General Statutes § 4-61 waives the state's sovereign immunity with respect to certain claims arising under public works contracts and provides in relevant part: "(a) Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Administrative Services, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined . . . .

"(b) As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims

for determination under (1) the rules of any dispute resolution entity, approved by such person, firm or corporation and the agency head and (2) the provisions of subsections (b) to (e), inclusive, of this section, except that if the parties cannot agree upon a dispute resolution entity, the rules of the American Arbitration Association and the provisions of said subsections shall apply. The provisions of this subsection shall not apply to claims under a contract unless notice of each such claim and the factual bases of each claim has been given in writing to the agency head of the department administering the contract within the time period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier. A demand for arbitration of any such claim shall include the amount of damages and the alleged facts and contractual or statutory provisions which form the basis of the claim. No action on a claim under such contract shall be brought under this subsection except within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends three years after the acceptance of the work by the agency head of the department administering the contract evidenced by a certificate of acceptance issued to the contractor or three years after the termination of the contract, whichever is earlier. Issuance of such certificate of acceptance shall not be a condition precedent to the commencement of any action. . . .”

[4] The plaintiff subsequently withdrew its application for a prejudgment remedy.

[5] The defendant appealed from the court's decision overruling its objection to the plaintiff's application for a prejudgment remedy, but that appeal was dismissed for lack of a final judgment. *State* v. *Bacon Construction Co.*, 300 Conn. 476, 478, 15 A.3d 147 (2011).

[6] The defendant also challenges on appeal the trial court's view of the earlier decision on its objection to the plaintiff's application for a prejudgment remedy as the law of the case. “The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance.” (Internal quotation marks omitted.) *Perugini* v. *Giuliano*, 148 Conn. App. 861, 879–80, 89 A.3d 358 (2014). In arguing that the court improperly applied the law of the case doctrine in denying its motion for summary judgment, the defendant challenges the correctness of the earlier decision rejecting its claims of preclusion. The inquiry of whether the issue was correctly decided when it was initially reviewed by the prejudgment remedy court, in the context of an examination of the law of the case doctrine, is subsumed by our resolution of the defendant's principal claims on appeal.

[7] See, e.g., *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 350, 15 A.3d 601 (2011).

[8] Practice Book § 10-10 provides: “Supplemental pleadings showing matters arising since the original pleading may be filed in actions for equitable relief by either party. In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff and cross claims against any codefendant provided that each such counterclaim and cross claim arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint; and if necessary, additional parties may be summoned in to answer any such counterclaim or cross claim. A defendant may also file a counterclaim or cross claim under this section against any other party to the action for the purpose of establishing that party's liability to the defendant for all or part of the plaintiff's claim against that defendant.”

[9] To the extent that the defendant asks this court to apply the common-law compulsory counterclaim rule, we could not, even if we were inclined to do so, because we are constrained by the rules of practice adopted by the Superior Court judges of this state and are without authority to make changes to those rules. *State* v. *DeJesus*, 288 Conn. 418, 507–508, 953 A.2d 45 (2008) (*Katz, J.*, dissenting).