******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEPARTMENT OF TRANSPORTATION *v.*
WHITE OAK CORPORATION
(SC 19165)

Palmer, Zarella, Eveleigh, McDonald, Espinosa,
Robinson and Vertefeuille, Js.

*Argued March 24—officially released November 17, 2015*

*Linda L. Morkan*, with whom were *Todd R. Regan*
and, on the brief, *Dennis C. Cavanaugh*, for the appel-
lant (defendant).

*Lawrence Russ*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney gen-
eral, for the appellee (plaintiff).

*Opinion*

PALMER, J. The defendant, White Oak Corporation (White Oak), appeals from the judgment of the Appellate Court reversing the judgment of the trial court, *Hon. Richard M. Rittenband,* judge trial referee, which granted White Oak's application to confirm an arbitration award and denied the application of the plaintiff, the Department of Transportation (department), to vacate, correct or modify that award. See *Dept. of Transportation* v. *White Oak Corp.,* 141 Conn. App. 738, 740, 789, 62 A.3d 599 (2013). On appeal, White Oak claims that the Appellate Court incorrectly determined that the arbitration panel exceeded its authority in rendering an award on White Oak's claim that the department wrongfully had withheld, as liquidated damages, $5,343,000 for delays in the reconstruction of the Yellow Mill Pond Bridge and a portion of Interstate 95 in the city of Bridgeport. More particularly, White Oak argues that the Appellate Court incorrectly determined that, in a prior action brought by the department to enjoin the arbitration, the trial court, *Sheldon, J.,* limited the scope of the arbitrable issues in the present case to a single claim of wrongful termination such that the arbitration panel, having determined that there was no wrongful termination, lacked jurisdiction to decide White Oak's liquidated damages claim. We agree with White Oak and, accordingly, reverse the judgment of the Appellate Court.

The following facts and procedural history are relevant to our analysis of White Oak's claim. On June 6, 1994, the parties entered into a contract for the construction of the Tomlinson Lift Bridge over the Quinnipiac River in the city of New Haven. On April 11, 1997, the parties entered into a second contract for the reconstruction of the Yellow Mill Pond Bridge and a portion of Interstate 95 in Bridgeport. From the beginning, both projects were marred by conflict and significant delays such that, on March 9, 2000, the department, White Oak and White Oak's surety, American International Group, reached an agreement to reassign the two contracts to other contractors for completion.[1] In the agreement, the parties stipulated that "nothing set forth in this [a]greement is intended to, or should be deemed to, waive, alter or diminish in any respect any of the claims, rights, positions or defenses of the parties, whether or not previously asserted, with respect to delays, costs, occurrences or any other matter occurring during the time that [White Oak] was [the] general contractor on the subject contracts. It is understood that all such claims, rights, positions or defenses of all parties to this [a]greement are hereby expressly reserved." The agreement also provided that, "[w]ith respect to any issue presented to an arbiter . . . regarding liability for the payment or return of liquidated damages in connection with the Bridgeport or Tomlinson [matter],

the arbiter shall not be informed by any party, in any fashion, as to which party currently holds the money representing the liquidated damages in dispute, except as may be necessary for the determination of liability for interest after entitlement is determined. The arbiter shall be told only that the liquidated damages are at issue, and that the arbiter must determine which party is entitled to the disputed liquidated damages, or to any portion of those damages, in accordance with the applicable contract provisions."

Thereafter, White Oak filed against the department two separate notices of claims and corresponding demands for arbitration with the American Arbitration Association (association) pursuant to General Statutes § 4-61.[2] In the notice and demand filed in connection with the contract in the Tomlinson matter, White Oak sought $93,793,891.11 in damages for, inter alia, the department's allegedly wrongful termination of that contract. In the notice and demand filed in connection with the contract in the Bridgeport matter, White Oak sought $45,205,336.30 in compensation "for delays in the project, nonpayment of contract amounts owed [including money wrongfully withheld as liquidated damages], nonpayment of extra work and other impacts and wrongful termination . . . ." With respect to the liquidated damages claim, the notice in the Bridgeport matter specifically provided that White Oak was seeking damages "in the approximate principal amount of $45,205,336.30," of which $5,343,000 represented an amount "wrongfully withheld by the [department] as liquidated damages for late completion . . . ." The demand in the Bridgeport matter, which incorporated by reference the notice, stated that White Oak was seeking arbitration of all of the "disputes" set forth in the notice, including its claim that "[the department] improperly and without justification assessed liquidated damages against [White Oak]."

After the notice and demands were filed in the Bridgeport and Tomlinson matters, the department commenced an action in the Superior Court, seeking to enjoin White Oak and the association from arbitrating the Tomlinson matter, and, on November 15, 2002, the department filed an amended complaint seeking to enjoin arbitration in the Bridgeport matter as well. In its amended complaint, the department alleged, inter alia, that the association lacked subject matter jurisdiction over White Oak's claims in the Bridgeport and Tomlinson matters because White Oak lacked standing to bring them and because the claims were impermissible pass-through or conduit claims. The department also alleged that the notice and demand in the Tomlinson matter stated only a single claim for wrongful termination and that the notice and demand in the Bridgeport matter stated multiple claims "at least one part of [which] . . . is . . . a claim for wrongful termination . . . ." With respect to both the Bridgeport and Tomlin-

son matters, the department alleged that the association lacked subject matter jurisdiction over White Oak's wrongful termination claims because those claims failed to comply with the notice requirements of § 4-61 (b). Specifically, the department alleged that the notices and demands did not state "the factual bases" of the wrongful termination claims, failed to state facts describing either an actual or a constructive termination of the contracts, and failed to explain how the department's alleged conduct violated either the annulment or the termination provision of the contracts. Finally, with respect to the demand in the Bridgeport matter, the department alleged that it failed to satisfy the pleading requirements of § 4-61 (b) because it did not state the dollar amounts of each individual claim separately but, instead, identified a single amount for all of the claims together. On March 3, 2003, following the submission of briefs by the parties, the court, *Sheldon, J.*, heard arguments and took the matter under advisement. Thereafter, the parties waived the 120 day time limitation for the filing of a memorandum of decision.

Arbitration in the Bridgeport and Tomlinson matters continued notwithstanding the pendency of the injunction action before Judge Sheldon. On December 30, 2004, before Judge Sheldon ruled in the injunction action, the arbitration panel in the Tomlinson matter rejected White Oak's wrongful termination claim and awarded the department $1,169,648.33 in damages. The panel denied the department's request for liquidated damages, however, concluding that the contractual liquidated damages amount of $5000 per calendar day was unreasonable and constituted an unenforceable penalty. The arbitration panel further concluded that, although White Oak's notice and demand were ambiguous "as to whether White Oak was maintaining a claim or claims other than a claim for damages arising out of wrongful termination . . . [a]ny uncertainty on this point was conclusively eliminated in the view of the panel on numerous occasions during these proceedings by the positions taken and representations made by White Oak in this arbitration and in . . . related court proceedings." The panel concluded that "[s]uch representations made by [White Oak's] counsel constitute binding admissions by White Oak." After the final arbitration award was rendered in the Tomlinson matter, White Oak replaced its existing counsel.

On February 4, 2005, White Oak's new counsel wrote a letter to Judge Sheldon requesting a status conference in the injunction action. In the letter, counsel stated that the action was likely moot in light of the final arbitration award in the Tomlinson matter, and, because the department had filed a motion to dismiss the arbitration in the Bridgeport matter, in which it argued that the panel lacked subject matter jurisdiction over White Oak's claims for the same reasons it had sought to enjoin the arbitration in the injunction action before

Judge Sheldon. Counsel stated that, by submitting these jurisdictional issues to the arbitration panel, which were identical to the issues presented in the injunction action, the department had waived the right to have the court decide them. Finally, counsel for White Oak informed the court that the "[the department] has asserted counterclaims [in the Bridgeport matter] seeking money damages from White Oak. [The department] is seeking to affirmatively establish [the] liability of White Oak arising from alleged acts or omissions during the construction of the project [in the Bridgeport matter]. Therefore, [the department] can no longer shield itself from any of White Oak's claims that arise under or relate to [that] [p]roject . . . . White Oak is seeking all damages available based on every theory that the facts alleged in the demand will support."

White Oak subsequently filed a motion to dismiss the injunction action for the reasons set forth in counsel's letter. Before a hearing on that motion could be held, however, the arbitration panel in the Bridgeport matter heard oral argument on the department's motion to dismiss the arbitration in that matter. At that time, the department contended that White Oak was seeking to litigate "all possible claims based on all potentially applicable legal theories" supported by the notice and demand and that the panel should limit White Oak to a single claim of wrongful termination, as the arbitration panel in the Tomlinson matter had done, on the basis of White Oak's prior representations to the panel and to Judge Sheldon. In response, counsel for White Oak argued, inter alia, that, "clearly, the [department] knew, and [it] defended, and [it has] taken action throughout this case knowing full well that the pleadings, [which] . . . establish [the arbitration panel's] jurisdiction, articulate claims for wrongful termination as well as delay." Counsel for White Oak further argued that the department had "very vociferously argued that one of the reasons you can throw this case out is because [White Oak] didn't satisfy [§] 4-61 in some technical way. I'm going to demonstrate to you that [White Oak] satisfied [§] 4-61 as discretely and perfectly as could be done for all claims, not just wrongful termination."

Thereafter, on June 24, 2005, Judge Sheldon held a hearing on White Oak's motion to dismiss the injunction action. At that time, the parties informed Judge Sheldon that the arbitration panel in the Bridgeport matter had summarily denied the department's motion to dismiss the arbitration. On October 24, 2005, Judge Sheldon granted White Oak's motion to dismiss the injunction action insofar as it related to the arbitration in the Tomlinson matter but denied the motion insofar as it related to the arbitration in the Bridgeport matter. With respect to White Oak's claim that the department had waived the right to de novo judicial review of its jurisdictional claims by having submitted them to arbitration, Judge Sheldon stated that waiver "is a special defense

to the merits of an opponent's jurisdictional challenge, not a basis for divesting the court of its subject matter jurisdiction to hear and decide that challenge" in a motion to dismiss.

On April 3, 2006, Judge Sheldon rejected all of the department's jurisdictional claims in the injunction action. In his memorandum of decision, after making extensive factual findings regarding the underlying dispute between the parties, Judge Sheldon addressed each of the department's claims. In addressing the department's contention that the wrongful termination claim failed to comply with the notice requirements of § 4-61 (b), Judge Sheldon, after describing the notice in the Bridgeport matter in detail, stated in relevant part: "Upon reviewing the challenged notice, the court has no doubt that it was more than sufficient to inform the [department] as to the general nature of [White Oak's] wrongful termination claim. Indeed, as [White Oak] . . . argue[s], the essence of that claim fairly leaps from the pages of the notice, which describes in considerable detail a termination inevitably resulting from a perfect storm of poor planning and mismanagement by the [department], resulting delays in the project schedule for which the [department] refused to take responsibility, or thus to pay for extra work or to grant reasonable extensions to make up for lost time, and, in the end, the making of impossible demands for final project completion on a schedule that could not possibly be met. . . . For these reasons, the court rejects the [department's] defective notice claim as completely unfounded." (Internal quotation marks omitted.)

Next, Judge Sheldon addressed and rejected the department's claim that White Oak's demand for arbitration in the Bridgeport matter was fatally deficient under § 4-61 (b) in that it failed to adequately allege the factual basis of the wrongful termination claim and failed to state the specific amount of damages pertaining to White Oak's individual claims. With respect to the department's claim that the demand failed to describe the wrongful termination claim in sufficient detail, Judge Sheldon stated that "the demand is virtually identical in substance to the . . . notice [in the Bridgeport matter]. That is, essentially all of the factual allegations set forth in the first three [parts] of the notice are repeated in the demand, with only minor changes, where they appear in the first thirty-four numbered paragraphs of the demand together with certain additional allegations of unpaid-for project delay. Thus, paragraph 34 of the demand restates, in abbreviated form, the same theory of wrongful termination that appears in the 'Wrongful Termination' [portion] of the notice . . . .

"What is plainly different [between] the demand [and] the notice is that the demand listed all of its factual allegations as parts of a single claim of wrongful termi-

nation, whereas the notice, though incorporating the allegations from its 'Project Delays' and 'Nonpayment of Contract Claims' [parts] into its 'Wrongful Termination' [part], listed them separately. Consistent with this change, the demand concluded by listing a single amount of damages without suggesting that that amount applied to multiple claims.

"Against this background, [the] court must reject the [department's] first challenge to the sufficiency of the . . . demand [in the Bridgeport matter] because it did indeed state the factual bases of [White Oak's] wrongful termination claim, describing it in essentially the same manner as [it] had [in] the . . . notice. Whether the facts therein alleged are true and, if so, whether they are sufficient to prove a wrongful termination are matters for the arbitration panel to decide when it hears the merits of that claim. For these purposes, however, what matters is that the claim has been sufficiently stated to apprise the arbitrators and the [department] of the general nature of that claim, and that has certainly been done. . . .

"Finally, turning to the [department's] challenge to the . . . demand [in the Bridgeport matter], insofar as it listed only a single amount of damages to be sought upon the arbitration of its wrongful termination claim, the court [concludes] that that challenge must also be rejected. What was implicit in [White Oak's] . . . notice [in the Bridgeport matter] was made explicit in its . . . demand, to wit: that its wrongful termination claim is based [on] and subsumes within it the entire, allegedly unreasonable course of conduct that led up to it, including all of the costly, damaging, unreasonable acts by which [White Oak] claims it was forced to endure and not [to] be compensated for substantial project delay, to experience nonpayment of [money] due . . . under the contract, and ultimately to lose the contract and incur the obligation to indemnify its surety for the completion of the contract by [a third party]. Since that claim, though supported by multiple acts of alleged misconduct, is a single claim, it is appropriate to list for it a single amount of claimed damages in the demand for arbitration required by [§] 4-61 (b). For all of the foregoing reasons, the court rejects in its entirety the [department's] second challenge to the subject matter jurisdiction of the [association] over [White Oak's] claim of wrongful termination of its . . . contract [in the Bridgeport matter]." (Citations omitted; footnotes omitted.)

Judge Sheldon then rendered judgment in favor of White Oak "on all remaining counts and claims [in] the [department's] complaint in [the injunction] action, [in which] the [department] seeks to enjoin [White Oak] [from] further prosecuting or conducting further [arbitration] proceedings in the Bridgeport [matter] on [White Oak's] claim that the . . . contract [in the

Bridgeport matter] was wrongfully terminated." The department did not appeal from that judgment, and arbitration in the Bridgeport matter continued for another three years, including 103 hearing days, during which time White Oak sought to recover "the full extent of the damages [on all] claims permitted by the demand . . . ." With respect to its liquidated damages claim, White Oak's counsel argued during closing arguments to the arbitration panel that "the law is absolutely [unequivocal] [that], just because [liquidated damages] are in the contract doesn't mean [you] get them. That's not the law. . . . The rule is the amount has to be reasonable in relation to what the perceived damages might have been at the outset. And, to prove [this], the owner has . . . to demonstrate [that] he thought about it at the outset. Now, I suggest to you that the record . . . is devoid of any evidence that the owner spent five seconds thinking about the damages at the outset. [The department] put a [liquidated damages amount] in [the contract, but it is] a penalty. [One] [h]alf [of] the amount was deemed unsupportable and unsupported in the [arbitration in the] Tomlinson [matter] by the arbitrators, [one] half [of] the amount on a job twice as big. There is not a scintilla [of evidence] . . . to support [the contractual liquidated damages amount in this case].

"And that brings me to the second part of the topic . . . . If you decide it's a penalty, you can't enforce it. So, the first element is, is it reasonable? If you find it's not, you can't enforce it. The second element is, [even] if you think . . . it's reasonable, but you determine it's a penalty, you can't enforce it."

On October 31, 2009, the arbitration panel in the Bridgeport matter awarded the department $1,270,378 in damages but denied the department's request for liquidated damages on the basis of its determination that the contractual liquidated damages amount of $12,000 per calendar day was unreasonable and constituted a penalty. The panel rejected all of White Oak's claims except for its claim that the department wrongfully withheld, as liquidated damages, $5,343,000 from amounts due under the contract in the Bridgeport matter. The panel concluded that, because the liquidated damages clause was unenforceable, White Oak was entitled to a return of the $5,343,000, plus interest in the amount of $4,903,930.41.

In reaching its determination, the arbitration panel once again rejected the department's assertion that the panel lacked subject matter jurisdiction over White Oak's claims or, alternatively, that the panel had subject matter jurisdiction over the wrongful termination claim only because that was the only claim for which notice had been provided under § 4-61. In support of the latter contention, the department argued, inter alia, that the arbitration panel in the Tomlinson matter had found,

and this court subsequently had concluded in *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 946 A.2d 1219 (2008) (*White Oak I*), that White Oak's only claim in the Tomlinson matter was for wrongful termination. The department argued that, because the facts underlying the wrongful termination claim in the Tomlinson and Bridgeport matters were the same, the panel should conclude that White Oak's sole arbitrable claim in the Bridgeport matter was for wrongful termination. The panel rejected this claim, explaining in relevant part: "[T]his panel finds that the claim by [White Oak] was not only one of wrongful termination, but also for damages." The panel continued: "The facts of [the] arbitration [in the Bridgeport matter] are different [from the arbitration in the Tomlinson matter]. [White Oak's] notice dated March 30, 2001, to the [department] and its demand for arbitration dated December 4, 2001, to the [association] contained claims for both wrongful termination and damages. . . . [In] the demand for arbitration, [White Oak] stated . . . [that it sought] 'compensation for delays in the project, nonpayment of contract amounts owed, nonpayment of extra work and other impacts and wrongful termination of [the] contract.' . . . Therefore, it is clear from the record that [White Oak's] arbitration was clearly within § 4-61."

Thereafter, the department filed an application in the Superior Court to vacate, correct or modify the arbitration award in the Bridgeport matter, and White Oak filed an application to confirm the award. In support of its application, the department argued, inter alia, that the arbitration panel improperly had adjudicated claims that "were beyond the scope of the single claim of wrongful termination set forth in [White Oak's] demand." Specifically, the department argued that, "[h]aving found against [White Oak] on the only legally cognizable claim . . . over which the [arbitration] panel had subject matter jurisdiction, the panel exceeded its jurisdiction conferred pursuant to . . . § 4-61 (b) and greatly exceeded [its] powers [conferred pursuant to General Statutes] § 52-417 (b) (4) . . . [and General Statutes] § 52-419 (a) (2) [and (3)] . . . ."

On May 2, 2011, the trial court, *Hon. Richard M. Rittenband*, judge trial referee, denied the department's application and granted White Oak's application to confirm the award. In his memorandum of decision, Judge Rittenband concluded, first, that the panel had jurisdiction to hear the arbitration and to render a decision on White Oak's claim for liquidated damages. In addressing this issue, Judge Rittenband determined that Judge Sheldon's 2006 decision in the injunction action represented the law of the case on issues of jurisdiction and arbitrability, stating in relevant part: "[Judge Sheldon] found that [White Oak] properly pleaded a claim of wrongful termination, that it had satisfied the requirements of . . . § 4-61, [and] that the notice of claim sufficiently informed the [department] of the general

nature of [White Oak's] wrongful termination claim. [Judge Sheldon] also stated that, although [White Oak's] notice of claim was divided into four different [parts] and its demand for arbitration was not similarly formatted, all the allegations in the demand flowed into a single claim of wrongful termination. . . . Finally, [Judge Sheldon] stated that, because [White Oak] brought a single claim of wrongful termination, [it] properly listed a single amount of damages in its demand for arbitration."

Judge Rittenband also determined that the arbitration award conformed to the submission presented to the panel and that the panel did not exceed its powers or so imperfectly execute them that a mutual, final and definitive award on the subject matter was not made,[3] explaining that "it is clear that the panel's award of wrongfully withheld liquidated damages . . . does not amount to a manifest disregard of the law . . . . The decision by Judge Sheldon specifically held that the . . . wrongful termination claim is based [on] and subsumes within it the entire allegedly unreasonable course of conduct that [led] up to it, including all the costly, damaging, unreasonable acts by which [White Oak] claims it was forced to endure." (Emphasis omitted; internal quotation marks omitted.) Judge Rittenband further stated that, "[b]ased [on] the ruling by [Judge Sheldon], all claims, including liquidated damages and prejudgment interest, were included in and subsumed in the claim for wrongful termination." Finally, Judge Rittenband observed that, because the department could have challenged the arbitrability of the liquidated damages claim in the injunction action but failed to do so, under the doctrine of res judicata,[4] "[t]he [department could not] . . . raise additional challenges to arbitrability if it could have raised [them] in the earlier injunction [action]. The [department's] challenge to the liquidated damages and payment of prejudgment interest could have been raised in the earlier [action]."

The department appealed from the judgment of the trial court, *Hon. Richard M. Rittenband*, judge trial referee, to the Appellate Court, claiming, inter alia, that Judge Rittenband incorrectly concluded that the arbitration panel had jurisdiction to render an award on White Oak's liquidated damages claim even though the panel rejected White Oak's wrongful termination claim. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 141 Conn. App. 740, 752–53, 783. Specifically, the department argued that "the arbitration panel strayed beyond the confines delineated by [Judge Sheldon] in denying the department's request for injunctive relief and permitting the matter to proceed to arbitration on . . . White Oak's claim that the . . . contract [in the Bridgeport matter] was wrongfully terminated." (Internal quotation marks omitted.) Id., 753.

In addressing the department's claim, the Appellate

Court accepted, as a point of departure, the department's contention that Judge Sheldon's decision had limited White Oak to a single claim of wrongful termination. The Appellate Court then stated: "This case is not about whether [Judge Sheldon] . . . properly interpreted § 4-61 [in the injunction action] or whether [he] properly concluded that the sole claim set forth in White Oak's demand for arbitration was one for wrongful termination. Neither party appealed [on those grounds], [and Judge Rittenband] . . . adopted [that conclusion] as [his] own as to questions of jurisdiction and arbitrability." Id., 749. The issue, the Appellate Court explained, was whether Judge Rittenband had correctly interpreted Judge Sheldon's decision in the injunction action as conferring jurisdiction on the arbitration panel to entertain claims other than wrongful termination. See id. In deciding that question, the Appellate Court concluded that the transcripts of the October 29, 2002 and March 3, 2003 proceedings in the injunction action "indicate that a central inquiry [at those proceedings] concerned precisely what claims were being asserted by White Oak in its demand for arbitration." Id., 754. In light of various statements by White Oak's counsel that White Oak was pursuing only a claim for wrongful termination, the Appellate Court further concluded that Judge Sheldon, "consistent with White Oak's repeated and unequivocal attestations, [determined] that the demand contained but a single claim for wrongful termination." Id., 763. Thus, the Appellate Court concluded that, even if White Oak's claims were listed separately in the notice and demand in the Bridgeport matter, Judge Sheldon had treated them as a unitary claim of wrongful termination on the basis of White Oak's representations early on in the injunction action. See id. The Appellate Court then concluded as follows: "In deciding the department's request for injunctive relief, Judge Sheldon delineated the confines of the arbitral submission under § 4-61 (b). When the arbitration panel departed from those confines and opted to decide the parameters of its own jurisdiction in contravention of *White Oak I*, it exceeded its authority. [The court] therefore agree[s] with the department that the [arbitration] panel lacked jurisdiction to award White Oak . . . [the amount withheld for] liquidated damages and [approximately] $4.9 million in prejudgment interest after it determined that no wrongful termination transpired."[5] Id., 787.

On appeal to this court upon the granting of certification,[6] White Oak claims that the Appellate Court misconstrued Judge Sheldon's decision as having limited the arbitral submission to a single claim of wrongful termination such that the arbitration panel lacked jurisdiction to award White Oak money wrongfully withheld as liquidated damages. White Oak maintains that the only way it could have lost the right to pursue its liquidated damages claim is if Judge Sheldon took the claim

away from White Oak, or if White Oak abandoned it during the injunction action. White Oak argues that the record supports neither conclusion. To the contrary, according to White Oak, "Judge Sheldon's ruling in the injunction action contains no discussion of the liquidated damages claim; [the department] did not specifically challenge the arbitrability of the liquidated damages claim in . . . the injunction action, and the question was not argued or briefed during those proceedings." (Emphasis omitted.)

In support of its contention, White Oak argues that the Appellate Court relied on "snippets of colloquies" from two different hearings, only one of which concerned the arbitration in the Bridgeport matter, which the Appellate Court improperly wove together to support the conclusion that White Oak had waived or abandoned every claim other than wrongful termination. White Oak further maintains that the Appellate Court, in analyzing the proceedings before Judge Sheldon, "omit[ted] any mention of the filings and oral argument that took place closest in time to Judge Sheldon's April, 2006 ruling," including the June 24, 2005 hearing on White Oak's motion to dismiss the injunction action and written correspondence between the parties and the court in which White Oak's counsel made clear that White Oak was "seeking all damages available based on every theory that the facts alleged in the demand [would] support." White Oak also claims that the department waived its right to de novo judicial review of whether the liquidated damages claim satisfies the notice requirements of § 4-61 by virtue of having submitted that issue to the arbitrators. Finally, White Oak contends that, even if this court applies de novo review to that claim, White Oak's notice and demand were sufficient to satisfy the requirements of § 4-61.

For its part, the department asserts that the Appellate Court properly determined that Judge Sheldon limited the arbitrable submission to a single claim of wrongful termination and, therefore, that, once the panel determined that there was no wrongful termination, it lacked the authority to award White Oak a return of the previously assessed liquidated damages. The department also contends that, even if the Appellate Court misconstrued Judge Sheldon's ruling as having limited the arbitral submission to a single claim of wrongful termination, the panel lacked jurisdiction over White Oak's liquidated damages claim because that claim failed to satisfy the notice requirements of § 4-61 (b).

For the reasons set forth hereinafter, we conclude that the Appellate Court incorrectly interpreted Judge Sheldon's 2006 decision as permitting White Oak to recover damages on a single claim of wrongful termination. We further conclude that White Oak's liquidated damages claim was more than sufficient to satisfy the notice requirements of § 4-61.

## I

We first address White Oak's claim that the Appellate Court incorrectly concluded that, contrary to the determination of Judge Rittenband, Judge Sheldon limited the arbitrable issues to a single claim of wrongful termination such that the arbitration panel, having determined that there was no wrongful termination, lacked subject matter jurisdiction over White Oak's liquidated damages claim. The legal principles that govern our review of this claim are straightforward. "The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Citation omitted; internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 217–18, 14 A.3d 307 (2011).

For several reasons, we agree with White Oak that Judge Sheldon did not purport to preclude the arbitration panel from deciding White Oak's liquidated damages claim. First, as White Oak argues, there is nothing in Judge Sheldon's memorandum of decision to indicate such an intention. Indeed, because the department never challenged the sufficiency of the notice with respect to the liquidated damages claim, Judge Sheldon had no reason to consider whether that claim met the notice requirements of § 4-61. For this reason alone, we agree with White Oak that it was improper for the Appellate Court to attribute to Judge Sheldon an intention to strike the liquidated damages claim from the demand in the Bridgeport matter. The only reference to liquidated damages in Judge Sheldon's entire memorandum of decision appears in that portion of the decision describing part III of the notice in the Bridgeport matter, which sets forth the events preceding the department's alleged termination of the parties' contract.[7] The absence of explicit language barring the liquidated damages claim—or, for that matter, any other claim—is significant because, in its prayer for relief in its amended complaint in the injunction action, the department expressly requested that the court, if it were to determine that White Oak had adequately pleaded a wrongful termination claim, issue "an order enjoining [the arbitration panel] . . . from allowing the presentation, reliance [on], or recovery [on] any of the other portions of the . . . filings [in the Bridgeport matter] that have been identified in [the] . . . amended complaint as failing to satisfy the requirements of § 4-61." In count fourteen of that complaint, the department

also requested that the court *bar* or *eliminate* all claims from the demand for which a specific damages amount had not been alleged. No such order was issued. To the contrary, rather than enjoin any of the claims set forth in the notice and demand in the Bridgeport matter, Judge Sheldon rendered judgment in favor of White Oak on all counts of the amended complaint. As White Oak maintains, however, even if Judge Sheldon had enjoined the presentation of claims that the department had identified in its amended complaint as failing to comply with the notice requirements of § 4-61, the liquidated damages claim would not have been among them because the department never challenged the arbitrability of that claim in the injunction action.

Rather than parse the notice and demand to identify claims that were nonarbitrable, as the department had requested, Judge Sheldon concluded that White Oak's wrongful termination claim was "based [on] and subsume[d] within it the entire, allegedly unreasonable course of conduct that led up to it, including all of the costly, damaging, unreasonable acts by which [White Oak] claims it was forced to endure and not [to] be compensated for substantial project delay, to experience nonpayment of [money] due . . . under the contract, and ultimately to lose the contract and incur the obligation to indemnify its surety for the completion of the contract by [a third party]." Unlike the Appellate Court, we do not read this language as consistent with an intention to bar White Oak from recovering on the individual claims comprising the wrongful termination claim such that the arbitration panel, having determined that the termination was not wrongful, was powerless to award White Oak money due under the contract, or to return to White Oak money that the department improperly had withheld as liquidated damages. Rather, we agree with White Oak that the more reasonable interpretation is that Judge Sheldon simply concluded that the term "wrongful termination," as used in the demand, "was essentially an umbrella label, catching under its expanse the multiple categories of claims that had been more specifically outlined in [the] notice," and, thus, contrary to the department's contention, White Oak properly had included a single amount for damages in the demand.

Indeed, throughout the injunction proceedings, Judge Sheldon indicated that his role was not to decide the merits of any of White Oak's claims but merely to determine whether White Oak had satisfied the relatively modest notice requirements of § 4-61. Consistent with this understanding, Judge Sheldon observed in his memorandum of decision that § 4-61 requires only that a contractor provide sufficient information about a claim to enable the department to attempt to resolve it short of arbitration. Judge Sheldon also observed that the statute's notice requirements must be liberally construed in favor of the claimant and were "obviously not

designed or intended to deprive claimants of their right to expand or contract their duly noticed claims when new evidence appears after notice has been given. Instead, [they] only [prevent] them from demanding arbitration on any new and different claims as to which there has been no prior notice.''

As we previously indicated, in reaching a contrary conclusion, the Appellate Court relied on statements that White Oak's original counsel had made to the court in 2002 and 2003. As White Oak argues, however, the Appellate Court's analysis of the proceedings before Judge Sheldon overlooked the filings and oral argument that occurred closer in time to his ruling. With respect to the 2002 statements, we agree with White Oak that the Appellate Court improperly relied on them because they were made before the department amended its complaint to enjoin the arbitration in the Bridgeport matter, and, therefore, they clearly were not made in relation to that proceeding. With respect to the 2003 statements,[8] although the department had amended its complaint by that time, the record is unclear as to whether the statements were made in relation to arbitration in the Tomlinson matter, the Bridgeport matter, or both. The transcript of the June 24, 2005 hearing indicates, however, that Judge Sheldon understood them as referring only to the arbitration in the Tomlinson matter. At that time, in discussing the outcome of the Tomlinson matter, the department stated: ''Your Honor, [there were] extracted concessions from White Oak at [the 2002 and 2003 hearings] that the sole claim [in the Tomlinson arbitration] was one for wrongful termination, actual wrongful termination, not constructive wrongful termination. The [arbitration] panel [in the Tomlinson matter] chose to decide the case based on that claim that there was no actual wrongful termination.'' Judge Sheldon responded: ''I have a fairly clear recollection of my interchange with [White Oak's counsel] back when we first talked about this. And I do recall the claim being made, and I pressed him on the point. I recall it as you described it. . . . I recall him making it very, very clear that this was a wrongful termination claim. . . . And that was one of the reasons why I believe it was claimed and contended that . . . [§] 4-61 notice was adequate under the circumstances [if] that was all that was being claimed, *that was all that was ever being sought in . . . the Tomlinson arbitration*. That's my recollection.'' (Emphasis added.) Counsel for the department agreed, stating that, in the arbitration proceedings in the Tomlinson matter, ''[t]here was in fact this concession by [White Oak's counsel] that [White Oak was pursuing] a single claim for actual wrongful termination. And there was extensive discussion before Your Honor that [White Oak was] going to live [or] die by that, [that] you're not going to take this and you're not going to use this as an open sesame to bring in everything you want. And the first

thing that happened at the first [arbitration] hearing in [the] Tomlinson [matter], the chairman of the arbitration panel asked both counsel what happens if we find that there is no actual wrongful termination.”

At that same hearing, counsel for the department also informed the court that the department was no longer challenging the jurisdiction of the arbitration panel in the Tomlinson matter “because, to the extent that the panel’s ruling stayed within the bounds . . . that Your Honor had set, we don’t take issue with the panel’s award.” Judge Sheldon responded: “I didn’t set those bounds, but I enlisted [White Oak’s counsel]. I mean, he could have put it in blood, and it wouldn’t have been more solemn . . . and I guess that was invoked and relied on by the [arbitration] panel [in the Tomlinson matter]. [Counsel] made it very clear what it was that he was pursuing on behalf of White Oak. If that’s all [that] the panel addressed, and [the department] won on that claim, and then [the department] presented a counterclaim and [it] won on that claim, I guess my real question is what remains? Why is this [injunction action] not moot with respect to the Tomlinson matter? *I understand that Bridgeport is a very different matter.*” (Emphasis added.)

At no time did the department either seek to disabuse Judge Sheldon of his understanding that, in fact, the Bridgeport matter presented “a very different matter” or otherwise argue that wrongful termination was the sole arbitrable issue in that matter as well. The department’s failure to make such an argument supports White Oak’s assertion that the parties and Judge Sheldon were fully aware, at that stage in the proceedings, that White Oak was not relying on a single theory of wrongful termination in the Bridgeport matter but, rather, was pursuing the full breadth of the claims and damages alleged in the notice and demand in the Bridgeport matter. Indeed, as we previously indicated, several months before the June, 2005 hearing, and a full fourteen months before Judge Sheldon issued his ruling in the injunction action, White Oak’s counsel had informed the department and the court that, to be clear, White Oak was seeking all damages based on every theory that the facts alleged in the demand in the Bridgeport matter would support.

The June, 2005 hearing also followed on the heels of the arbitration panel’s rejection of the department’s contention in the Bridgeport matter that White Oak should be estopped from pursuing any claim other than wrongful termination because of prior representations that White Oak or its counsel had made to the arbitration panel and the court. Moreover, arbitration in the Bridgeport matter continued for three more years after Judge Sheldon issued his decision, during which time White Oak continued to press for an array of damages, including a return of allegedly wrongfully withheld liqui-

dated damages. At no time did the department return to Judge Sheldon for an order enjoining these claims, even though, on appeal, the department argues that it was always under the impression that Judge Sheldon's decision precluded those claims. Indeed, the last time the parties appeared before Judge Sheldon, in 2005, the department expressly informed him that, going forward, if White Oak attempted to pursue claims that the department did not believe were properly noticed in the demand, the department had "the ability and the right to come back to . . . court and say, Your Honor, you should enjoin [White Oak] from pursuing this within the arbitration . . . ."

Our review of the Appellate Court's decision suggests that that court, consistent with the department's repeated assertions before the arbitration panel and the Appellate Court itself, was persuaded that White Oak had waived, or should be judicially estopped from pursuing, any claim other than wrongful termination on the basis of the purported admissions of White Oak's counsel in 2002 and 2003.[9] The department makes a similar argument in this court.[10] Waiver, however, presents a quintessential question of fact for the trier of fact; see, e.g., *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, 272 Conn. 617, 622, 866 A.2d 582 (2005); and such fact-finding is not the function of an appellate court. See, e.g., *State* v. *Nowell*, 262 Conn. 686, 695–96, 817 A.2d 76 (2003). "Waiver is based [on] a species of the principle of estoppel[11] and [when] applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . . Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Footnote added; internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 87, 919 A.2d 1002 (2007). Similarly, judicial estoppel "will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. . . . We further limit judicial estoppel to situations [in which] the risk of inconsistent results with its impact on judicial integrity is certain. . . . Thus, courts generally will not apply the doctrine if the first statement or omission was the result of a good faith mistake . . . or an unintentional error." (Internal quotation marks omitted.) *Dougan* v. *Dougan*, 301 Conn. 361, 372–73, 21 A.3d 791 (2011). Like waiver, the judicial estoppel doctrine "depends heavily on the specific factual context . . .

before the court." (Internal quotation marks omitted.) *Adelphia Recovery Trust* v. *Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014).

Although the department repeatedly argued—to no avail—in arbitration in the Bridgeport matter that White Oak should be barred, on the basis of principles of waiver and estoppel, from recovering on any claim other than wrongful termination, it never once sought a ruling from Judge Sheldon on this issue, and, therefore, Judge Sheldon's memorandum of decision is devoid of any factual findings with respect to that contention. The department likely did not raise the issue in the injunction action because, as Judge Sheldon himself explained in denying White Oak's motion to dismiss that action, waiver is a special defense to the merits of a claim, not a basis for divesting a court of jurisdiction over it. Accordingly, even if the department argued in the injunction action that White Oak had waived the right to pursue damages on the basis of any theory other than wrongful termination, or should be judicially estopped from recovering under any other theory, Judge Sheldon properly could not have decided that question because the issues in the injunction action were strictly jurisdictional, thereby requiring the court to determine solely whether the notice and demand in the Bridgeport matter satisfied the jurisdictional requirements of § 4-61. Finally, it is axiomatic that the arbitration panel's determination in the Bridgeport matter that White Oak did *not* waive any of the claims in its demand was binding on the Appellate Court, just as it is binding on this court. See, e.g., *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992) ("[b]ecause we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution"); see also General Statutes § 4-61 (e) ("[t]he arbitrators' findings of fact and decision shall be final and conclusive and not subject to review by any forum, tribunal, court or government agency, for errors of fact or law").

In concluding otherwise, the Appellate Court also appears to have credited the department's contention that our prior decision in *White Oak I* is dispositive of the issues posed by the present case.[12] Specifically, the Appellate Court stated: "[T]he Supreme Court emphasized in *White Oak I* . . . [that] the first arbitration panel in the Tomlinson [matter] addressed the scope of the submission set forth in White Oak's demand for arbitration and, like Judge Sheldon, concluded that it contained only a single claim of wrongful termination. The [Supreme] [C]ourt echoed that panel's observation that 'the breadth of White Oak's demand for arbitration raised the question as to whether White Oak was maintaining a claim or claims other than a claim for damages arising out of wrongful termination, despite the limita-

tions of § 4-61' and that '[a]ny uncertainty on this point was conclusively eliminated . . . by the positions taken and representations made by White Oak in this arbitration and in the related court proceedings.'" (Emphasis added.) *Dept. of Transportation* v. *White Oak Corp.*, supra, 141 Conn. App. 763 n.15, quoting *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 17 n.13.

To be sure, this court did not conclude in *White Oak I* that Judge Sheldon had determined that the notice and demand in the Bridgeport and Tomlinson matters contained a single claim of wrongful termination, and we expressed no view on the propriety of the arbitration panel's determination in the Tomlinson matter that White Oak's prior admissions concerning the scope of its demand in that matter were binding on White Oak. The principal issue in *White Oak I* was whether § 4-61 permitted White Oak to commence a second arbitration under the contract in the Tomlinson matter. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 2–3. As we explained in our decision in *White Oak I*, shortly after the arbitration panel in the Tomlinson matter issued its final award, "White Oak filed a second notice of claim against the department, followed by a second demand for arbitration, seeking $110,314,807 in damages, plus interest, for delays associated with the construction [in] the Tomlinson [matter] . . . ." Id., 5. Thereafter, the department commenced an action in the Superior Court, seeking to enjoin the second arbitration on the ground that it was barred by sovereign immunity. Id. "The trial court, *Berger, J.*, denied the department's request for a permanent injunction"; id.; concluding that the second arbitration was not barred by § 4-61 because White Oak's first notice and demand contained a claim for delay damages, which the parties had agreed to bifurcate. See id., 5–6, 19.

In disagreeing with Judge Berger's reasoning, we explained that § 4-61 did not permit "a general contractor to commence a second arbitration against the [department] to pursue claims that previously had been, or could have been, arbitrated between the parties in a prior action." Id., 3. We observed further that a reviewing court, in determining whether a subsequent action is barred by § 4-61, "need not undertake an inquiry into the prior claims that actually had been litigated or arbitrated between the parties, or apply the transactional test . . . [that is typically used] to determine whether the current claims form a part of the same transaction, or series of connected transactions, out of which the prior claims arose. Rather, the court simply must ascertain whether the parties previously had litigated or arbitrated any disputed claims arising under the same public works contract at issue in the current proceeding, and whether the current claims had existed at the time of the earlier action." (Citation omitted; emphasis omitted; footnote omitted; internal

quotation marks omitted.) Id., 15.

Applying this test to the facts in *White Oak I*, we determined, first, that "[i]t [was] undisputed that White Oak's claim for delay damages fully had accrued prior to the commencement of the first arbitration and, consequently, that White Oak could have arbitrated its claim in that proceeding if it had chosen to do so. [The court's] thorough review of the record reveals, however, that the sole claim arbitrated by White Oak in the first arbitration was a claim for wrongful termination." Id., 16. We then explained, in a footnote, that the arbitration panel in the Tomlinson matter had determined that White Oak's prior statements regarding the scope of its demand in the Tomlinson matter constituted binding admissions on White Oak such that the panel was precluded from considering White Oak's other claims. See id., 17 n.13. In light of this procedural history, we concluded that Judge Berger's finding that the parties had agreed to bifurcate the issues was clearly erroneous. Id., 19 n.16.

Notwithstanding the limited scope of our inquiry in *White Oak I*, which focused solely on whether the parties previously had arbitrated disputes arising under the contract in the Tomlinson matter and, if so, whether Judge Berger correctly concluded that the parties had agreed to bifurcate the issues in that matter, the department consistently has argued—before the panel in the Bridgeport matter, before Judge Rittenband, before the Appellate Court, and now before this court—that *White Oak I* is dispositive of the jurisdictional issues presented in the present case because this court held in *White Oak I* that wrongful termination was the sole arbitrable issue. As we have explained, however, and as the arbitration panel in the Bridgeport matter correctly concluded in rejecting this argument,[13] *White Oak I* did not address any issue related to the arbitration in the Bridgeport matter. Accordingly, and for the reasons that we previously discussed, we agree with White Oak that the record does not support the Appellate Court's determination that Judge Sheldon intended to limit White Oak to a single claim of wrongful termination such that the panel in the Bridgeport matter, having determined that there was no wrongful termination, lacked authority to award White Oak money that allegedly was wrongfully withheld under the contract in the Bridgeport matter. Although we recognize that it is possible to construe some of the language in Judge Sheldon's decision as implicitly limiting the arbitrable issues to a single claim of wrongful termination, we will not read an arguably ambiguous decision as denying White Oak the right to recover on a potentially meritorious claim valued at more than $5 million, particularly when the department never challenged the arbitrability of that claim in the injunction action. In other words, we do not agree with the Appellate Court that the language of Judge Sheldon's decision is sufficiently clear

to warrant the conclusion that, notwithstanding White Oak's later representations to him, and the plain language of the notice and demand in the Bridgeport matter, both of which expressly state that White Oak was seeking "compensation for delays in the project, nonpayment of contract amounts owed, nonpayment of extra work . . . *and* wrongful termination of contract"; (emphasis added); Judge Sheldon determined that White Oak had alleged but a single claim for wrongful termination.

## II

We next address the department's claim that, even if Judge Sheldon did not strike the liquidated damages claim from the demand in the Bridgeport matter, this court nevertheless should conclude that that claim does not satisfy the jurisdictional notice requirements of § 4-61; see footnote 2 of this opinion; and, therefore, that the claim is barred by sovereign immunity. The department maintains that White Oak's claim for liquidated damages plus interest "never came close to satisfying § 4-61" because the demand failed to specify the per diem contractual liquidated damages amount, the contractual language governing liquidated damages, the specific dollar amount of the claim or the interest alleged to have accrued on the claim, and it also failed to "assert that the contractual liquidated damages constituted an unenforceable penalty or that the department should be ordered to return to [White Oak the] withheld liquidated damages."

In response, White Oak argues, inter alia, that the department is not entitled to de novo judicial review of the arbitrability of White Oak's liquidated damages claim under *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 987 A.2d 348 (2010), because the department, by voluntarily and repeatedly submitting that issue to the arbitrators, waived such review as a matter of law. It is unnecessary to decide whether the department waived de novo judicial review of its jurisdictional challenge to White Oak's liquidated damages claim because, even if we assume that there was no waiver, it is apparent that White Oak's notice and demand were more than sufficient to apprise the department of the general nature of that claim, which is all that § 4-61 requires.

In considering this question, we are mindful that § 4-61 waives the state's sovereign immunity with respect to any claim arising under a public works contract, as long as a contractor provides timely notice of the claim as provided under that statute. We previously have determined that notice of a claim satisfies the requirements of § 4-61 "if it communicates to the [s]tate the nature of the claim based on what is known at the time so that the [s]tate may attempt to resolve the problem short of arbitration." (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn.

167, 183, 9 A.3d 326 (2010). We also have determined that "[t]he history of the notice provision indicates a persistent concern that it not be applied so restrictively as to prevent contractors from pursuing meritorious claims and, accordingly, to defeat the purpose of § 4-61. Although § 4-61 was reworded in 1991 to require somewhat greater detail as to claims, that rewording was designed to prevent ambushes, not to provide a vehicle to defeat valid claims, and it was accompanied by other changes to § 4-61 that gave the state greater power to seek documentation from contractors and more time in which to evaluate the documentation, lessening the need for a highly specific notice of claim. Furthermore, pursuant to the 1961 amendments [to the statute], contractors are allowed limited time in which to give notice and to bring actions, ensuring that claims remain fresh. Finally, the legislature clearly intended that, in close cases, the scale tip in favor of affording the contractor the right to pursue its claim. This in turn promotes the policy objectives underlying § 4-61 by encouraging competitive bidding, resulting in greater quality construction and lower costs to the state." Id., 183–84. We previously have determined, moreover, that § 4-61 does not require notice of an intention to bring a particular cause of action but simply notice of the "[r]ight to payment, in whatever form . . . ." (Citation omitted; internal quotation marks omitted.) Id., 177. Finally, § 4-61 (a) authorizes an award of prejudgment interest, which "shall not begin to accrue . . . until at least thirty days after the claimant submits a bill or claim to the agency for the unpaid debt upon which such interest is to be based, along with appropriate documentation of the debt when applicable."

The foregoing principles make it clear, first, that White Oak's liquidated damages claim falls squarely within the purview of § 4-61's waiver of sovereign immunity because it is a claim arising under a public works contract. It is equally clear that White Oak's notice and demand alerted the department to the general nature of that claim. As we previously noted, the notice expressly stated that White Oak was seeking damages "in the approximate principal amount of $45,205,336.30" of which $5,343,000 represented an amount "wrongfully withheld by the [department] as liquidated damages for late completion . . . ." In the corresponding demand, which incorporated by reference White Oak's notice, White Oak further stated that it was seeking arbitration of all of the "disputes" set forth in the notice, including its claim that "[the department] improperly and without justification assessed liquidated damages against [White Oak]." The demand concluded: "Accordingly, [White Oak] hereby demands arbitration of the [referenced] disputes, and demands an award of damages in an amount not less than $45,205,336.30, plus interest and the costs and fees of this arbitration."

We therefore find no merit in the department's con-

tention that White Oak's liquidated damages claim does not comport with the notice requirements of § 4-61 because the notice and demand do not contain the specific information identified by the department. None of that information was necessary for the department to commence an investigation into the claim for the purpose of determining whether to settle or oppose it. Indeed, in our view, the department's arguments epitomize the hypertechnical reading of § 4-61 that this court eschewed in *C. R. Klewin Northeast, LLC* v. *State*, supra, 299 Conn. 179–84.[14] Because White Oak's notice and demand satisfied the requirements of § 4-61, the department's claim must fail.[15]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion ZARELLA, EVELEIGH, McDONALD, ESPINOSA and VERTEFEUILLE, Js., concurred.

[1] For ease of reference, we hereinafter refer to the Tomlinson Lift Bridge project and related litigation as the Tomlinson matter, and the Yellow Mill Pond Bridge and Interstate 95 project and related litigation as the Bridgeport matter.

[2] General Statutes § 4-61 provides in relevant part: "(a) Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Administrative Services, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined, provided notice of each such claim under such contract and the factual bases for each such claim shall have been given in writing to the agency head of the department administering the contract within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier. No action on a claim under such contract shall be brought except within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends three years after the acceptance of the work by the agency head of the department administering the contract evidenced by a certificate of acceptance issued to the contractor or three years after the termination of the contract, whichever is earlier. Issuance of such certificate of acceptance shall not be a condition precedent to the commencement of any action. . . .

"(b) As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims for determination under (1) the rules of any dispute resolution entity, approved by such person, firm or corporation and the agency head and (2) the provisions of subsections (b) to (e), inclusive, of this section, except that if the parties cannot agree upon a dispute resolution entity, the rules of the American Arbitration Association and the provisions of said subsections shall apply. The provisions of this subsection shall not apply to claims under a contract unless notice of each such claim and the factual bases of each claim has been given in writing to the agency head of the department administering the contract within the time period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier. A demand for arbitration of any such

claim shall include the amount of damages and the alleged facts and contractual or statutory provisions which form the basis of the claim. No action on a claim under such contract shall be brought under this subsection except within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends three years after the acceptance of the work by the agency head of the department administering the contract evidenced by a certificate of acceptance issued to the contractor or three years after the termination of the contract, whichever is earlier. Issuance of such certificate of acceptance shall not be a condition precedent to the commencement of any action. . . .”

Although § 4-61 has been the subject of recent technical amendments; see Public Acts 2013, No. 13-247, § 200; Public Acts 2011, No. 11-51, § 90; those amendments are not relevant to the merits of this appeal. For ease of reference, we refer to the current revision of § 4-61.

[3] General Statutes § 52-418 (a), which sets forth the standard of review governing an application to vacate, correct or modify an arbitration award, provides in relevant part: “Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.”

[4] Res judicata “bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action . . . which might have been made.” (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 420–21, 752 A.2d 509 (2000).

[5] The Appellate Court also rejected White Oak’s contention that, under *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 987 A.2d 348 (2010), the department waived the right to de novo judicial review of the issue of arbitrability by voluntarily submitting that issue to the panel in its 2005 motion to dismiss the arbitration in the Bridgeport matter. See *Dept. of Transportation* v. *White Oak Corp.*, supra, 141 Conn. App. 766–67, 780. The Appellate Court concluded that *Bacon Construction Co.* was distinguishable because, in the present case, in contrast to *Bacon Construction Co.*, the department consistently contested the panel’s jurisdiction over White Oak’s claims throughout the arbitration, even while submitting that issue to the panel for determination. See id., 769–70.

[6] We granted White Oak’s petition for certification to appeal, limited to the following issue: “Did the Appellate Court properly determine that [Judge Rittenband’s confirmation of] the arbitration award must be reversed?” *Dept. of Transportation* v. *White Oak Corp.*, 309 Conn. 910, 69 A.3d 307 (2013).

[7] Specifically, Judge Sheldon quoted certain of the following language from part III of the notice: “On December 16, 1999, the [department] sent [White Oak] a demand letter, in which the [department] inaccurately and wrongly blamed [White Oak] for the lateness of the [p]roject. In the letter, the [department] indicated that it would assess liquidated damages of [$12,000] per day against [White Oak], even though such a heavy penalty . . . might render White Oak financially incapable of completing the project.” (Internal quotation marks omitted.)

[8] The Appellate Court relied on the following colloquy between Judge Sheldon and White Oak’s original counsel:

“[Judge Sheldon]: . . . [L]et me ask you this: Are you making a claim that your demand . . . for arbitration in this case raises anything other than a termination claim?

“[Counsel for White Oak]: No. Only damages that flow from the termination. So, it’s all based on the termination.

“[Judge Sheldon]: And so the review you would have me conduct with respect to the adequacy of the demands that are raised in that claim go only to that claim and to none other?

“[Counsel for White Oak]: That is correct. Because there are adequate factual bases given pursuant to § 4-61, which [establishes our] claim for wrongful termination.” (Internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, supra, 141 Conn. App. 759.

[9] In its principal brief in the Appellate Court, the department argued: "Subsequent to [White Oak's] arbitration filings, for at least five years, all of [White Oak's] attorneys admitted and insisted, without exception or qualification—to the courts, to the . . . arbitration panels [in the Tomlinson and Bridgeport matters] and to the department, in written filings and in spoken statements—that [White Oak] had asserted in its arbitration papers, and was pursuing in both arbitrations, only one claim: the claim that the department had wrongfully terminated its project contracts." (Emphasis omitted.) *Dept. of Transportation* v. *White Oak Corp.*, Conn. Appellate Court Records & Briefs, December Term, 2012, Plaintiff's Brief p. 10. The department also asserted: "Under the singular facts of this case (particularly those concerning [White Oak's] numerous admissions that it was pursuing only a wrongful termination claim) and under the law concerning § 4-61, the . . . panel [in the Bridgeport matter] had no jurisdiction to make the awards that it did to [White Oak], and the trial court was in error in confirming those awards." Id., pp. 11–12. The department further argued that, "in the face of skepticism on the part of Judge Sheldon and the department, [White Oak's] various attorneys repeatedly insisted that [White Oak's] . . . papers stated only a claim for wrongful termination, and insisted that the only claim asserted by [White Oak] in the . . . arbitration [in the Bridgeport matter] was that termination claim." Id., p. 18.

[10] In its brief to this court, the department argues, inter alia, that, "in numerous, binding statements over several years, [White Oak] effectually declared that it had no [liquidated damages] claim, since any such allegation or wrong or damage was intended only to show the wrongfulness of, or damages from, the alleged termination. . . . Contrary to what [White Oak's] arguments imply, the binding nature of those statements does not derive from or depend [on] concepts of waiver but relates rather to the nature of admissions and stipulations, to judicial concern for fairness to parties and the court, to concepts of judicial estoppel and invited error." (Internal quotation marks omitted.)

[11] "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims . . . estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 366–67, 659 A.2d 172 (1995).

[12] As the Appellate Court explained, "[during] arbitration, counsel for the department alerted the arbitration panel to [this court's] decision [in *White Oak I*] and argued that it was dispositive of White Oak's attempt to obtain relief on claims other than wrongful termination. [Counsel] stated: . . . Before I talk about the evidence today, I want to state first something that may surprise you, but it's true. Under the authority of the new Supreme Court decision [in *White Oak I*], this case is over. Respectfully, it's not a matter of arbitrator discretion, it's a matter of jurisdiction, and we will detail this in our brief, but here is [a summary]. In its decision . . . the Supreme Court specifically addresses the Superior Court proceedings before Judge Sheldon and finds that the admissions made by . . . counsel [for White Oak] in the Superior Court and at the commencement of the arbitration were binding on White Oak, and that the arbitration hearings proceeded thereafter with the express limitations imposed by the court based on the admissions of counsel at that hearing, that both cases were termination claims. The . . . proceedings [in the injunction action before Judge Sheldon] are on the record, you've got them. The original demand, which formed the basis of White Oak's admissions and Judge Sheldon's order, was never amended in these proceedings. It's exactly what Judge Sheldon had before him.

"Under the authority of the Supreme Court, you cannot put the toothpaste back into the tube. The fact that [White Oak's counsel] did put on evidence of delays here does not save White Oak from being limited to a termination claim . . . . The fact that [counsel] put . . . some delay evidence on doesn't save [White Oak] because that's exactly what [counsel] argued at the Supreme Court in [the] Tomlinson [matter] and [that court] said no. It doesn't matter that you put on delay evidence, you are out. Delay damages have been out of this case since that Superior Court hearing [before Judge

Sheldon]. There was no termination here. There was no termination in [the] Tomlinson [matter], of course. And under § 4-61, this tribunal has no jurisdiction to determine anything other than a termination, which never happened. So, that's why I say the case is over." (Internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, supra, 141 Conn. App. 776–77.

[13] Specifically, the panel concluded: "[The department], in its brief, argued that [White Oak] did not comply with § 4-61, citing the Supreme Court ruling in [*White Oak I*] . . . decided May 20, 2008 . . . . Our facts do not fall within the facts of [*White Oak I*]; and this panel finds that . . . [that] case is different from this arbitration [in the Bridgeport matter]. We agree . . . [that] § 4-61 . . . should be strictly construed." The panel further concluded that *White Oak I* "dealt only with the Tomlinson [matter]" and that, in the arbitration in the Bridgeport matter, "the facts [were] different, and this panel finds that the claim by [White Oak] was not only one of wrongful termination . . . ."

[14] We also note that, because the primary purpose of the notice requirement of § 4-61 is to prevent an ambush of the state, the department's challenge to the adequacy of the notice and demand, insofar as they relate to White Oak's liquidated damages claim, is further undermined by the parties' agreement concerning the assignment of the contract in the Bridgeport matter, in which the parties expressly contemplated arbitration of White Oak's claim for a return of liquidated damages and agreed that "the arbiter shall not be informed by any party, in any fashion, as to which party currently holds the money representing the liquidated damages in dispute, except as may be necessary for the determination of liability for interest after entitlement is determined."

[15] We also reject the department's assertion that the arbitration panel in the Bridgeport matter lacked jurisdiction to award prejudgment interest because, under § 4-61 (a), the notice and demand must state that White Oak had submitted a bill or claim to the department for the unpaid debt on which such interest was to be based. In support of this contention, the department relies on the following language in § 4-61 (a): "Interest under section 37-3a shall not begin to accrue to a claimant under this section until at least thirty days after the claimant submits a bill or claim to the agency for the unpaid debt upon which such interest is to be based, along with appropriate documentation of the debt when applicable." We do not read this provision as imposing additional notice requirements on a claimant seeking interest under § 4-61 (a) but, rather, as prohibiting the accrual of such interest prior to a certain date.